Ex parte Joseph Willis DINKINS.

No. 2–86–048–CR.

Court of Appeals of Texas,
Fort Worth.

Oct. 1, 1986.

Zachry, Kearney, Hill, Beatty & Butcher and Tom L. Zachry, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., and Betty Stanton, Asst. Crim. Dist. Atty., Fort Worth, for appellee.

Before JOE SPURLOCK, II, HILL and KELTNER, JJ.

## OPINION

HILL, Justice.

Joseph Willis Dinkins presents by his application for writ of habeas corpus based upon double jeopardy his claim that his prosecution for the murder of Dr. Charles Dooley is barred by virtue of TEX.CONST. art. I, secs. 3, 14 and 19 and by U.S. CONST. amends. V and XIV. He relies on the doctrines of double jeopardy and collateral estoppel.

The trial court denied his application after hearing.

We affirm, because we find that Dinkins' prosecution for the murder of Dr. Charles Dooley is not barred by the doctrine of double jeopardy or collateral estoppel.

Joe and Paula Dinkins were married in 1963. In 1984, after previous marital problems, involving an affair that Joe had, Joe learned that Paula was having an affair with Dr. Charles Dooley, their family doctor. In June, 1984, Joe gave Paula a black eye and stabbed her in the leg. Three days later, he bought a pistol and ammunition. On July 4, 1984, Joe confronted Dr. Dooley in a hospital parking lot and shot him five times. He then drove to the Sanger-Harris store where his wife, Paula, was working and got her to follow him out to the parking lot, where he shot her five times. At his trial for Paula's murder, Joe admitted killing Paula and Dr. Dooley. The jury found him guilty of voluntary manslaughter and assessed his punishment at two years confinement in the Texas Department of Corrections.

In his sole point of error, Joe Dinkins argues that the trial court erred in failing to grant his application for writ of habeas corpus based upon double jeopardy because his prosecution for the murder of Dr. Charles Dooley would be barred by virtue of the constitutional provisions to which we have previously referred. The argument is based on the idea that evidence of the shooting of Dr. Charles Dooley presented at his trial for the murder of his wife, Paula, and arguments made at the punishment stage of that trial which referred to

the shooting death of Dr. Dooley, resulted in his being punished for the death of Dr. Dooley at Paula's trial. He asserts that a subsequent prosecution and assessment of punishment for the murder of Dr. Dooley would result in his being punished twice for the same offense.

The fifth amendment guarantee against double jeopardy is enforceable against the states through the fourteenth amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). It protects against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The protection against double jeopardy is also preserved by article I, section 14 of the Texas Constitution.

Since Dinkins has never before been tried for the murder of Dr. Charles Dooley, his contentions have no merit unless the record shows that he was punished for the shooting of Dr. Dooley upon his trial for the murder of his wife, Paula.

Dinkins was tried for the murder of his wife, Paula. The jury found him guilty of the offense of voluntary manslaughter in connection with the shooting death of his wife. In its charge on punishment, the court instructed the jury that "[i]t is necessary that the jury assess and fix the punishment for *this offense.*" (Emphasis added.) Dinkins refers to the following argument of the prosecutor at the punishment stage:

> Ladies and Gentlemen, the Defendant in this case, in order to convince you to probate him, has set up a double standard and you are going to have to fall for that double standard in order to give him probation and it's a gift, Ladies and Gentlemen.
>
> He wants to set up a double standard and hold Dr. Dooley to a higher standard than the ordinary person just because he took the Hippocratic oath. That he is not a human being. He is somehow above that, but the Defendant, Joe Dinkins, is just a fireman who is supposed to, according to his own witnesses, save, care and protect the lives of citizens of Fort Worth, but that is different than the Hippocratic oath that Dr. Dooley took.
>
> There is a difference in the affair that Joe Dinkins had versus the affair that his wife had.
>
> You are going to have to believe and fall for the Defendant's double standards to probate him.
>
> . . . .
>
> This Defendant who was going go in to tell Paula to get the kids together; I just want to turn myself in, happened to reload his gun and on the way to do that he killed Dr. Charles Kenneth Dooley.
>
> You are to punish him for the murder of his wife, that is, the punishment you are asked to render now, but the facts of this case also include the murder of Dr. Charles Kenneth Dooley.
>
> The leaving behind of his wife, Gail Dooley, who will now spend the remainder of her years as a widow. The leaving behind of two children that will graduate from college and maybe get married without a father to walk them down the aisle.
>
> . . . .
>
> And, Ladies and Gentlemen, if that's our society's values then your verdict should reflect that and this Defendant should receive a long term of years in the penitentiary.
>
> On March the 6th of 1985, you twelve jurors were locked up to spend the night in the Americana, which is a nice place, but you are without your freedom.
>
> You have now been punished as much as this Defendant has and he has killed two people. He has spent one night, one night of his life without his freedom for killing Paula Dinkins and Dr. Charles Kenneth Dooley, one night, just like you.
>
> The Defendant, through his attorney, tells you that his future is in your hands. It's been in these lawyer's for eight months and now it's in your hands.
>
> Ladies and Gentlemen, his future was in his hands. His own hands, when he took this gun on July 4th of 1984, and intentionally and knowingly killed his wife, Paula Dinkins.

Assessing punishment is not easy. It's not supposed to be easy.

But Ladies and Gentlemen, I hope that you will assess a proper punishment in this case, and the State would urge you to sign the first verdict form to sentence this Defendant to a term of years in the penitentiary, a substantial term of years in the penitentiary. This is not a probation case. This is not a case deserving a term of years less than ten years.

In addition to the arguments to which Dinkins refers, the prosecutor also made the following arguments:

Please let the punishment fit the *killing* that you've heard about here.

. . . .

Go back there and decide what *this killing* is worth in the term of years.

. . . .

. . . I would ask you for justice for *that* intentional *killing.*

. . . .

Consider what he did that day and punish him, sentence him for killing, intentionally killing Paula Dinkins. What was her life worth as she sat out there just eating her lunch that day? [Emphasis added.]

Dinkins' counsel made the following arguments to the jury:

I am going to agree with Mr. Parrish when he said, let's let the punishment . . . fit the *crime.*

. . . .

Obviously the situation involving—Mr. Parrish mentioned it—that Dr. Dooley also was shot on this occasion, that's to be determined by another jury at another time later on those charges.... [Emphasis added.]

The shooting of Dr. Dooley was a necessary part of the evidence in Dinkins' trial for the murder of his wife, Paula. When we consider the court's charge and the argument of counsel, we do not find that the jury was asked to assess punishment against Dinkins for the shooting of Dr. Dooley. If anything, the charge and counsel for the State and for Dinkins all re-ferred to the fact that the jury was to assess punishment based on the shooting for which Dinkins was being tried. Dinkins' counsel told the jury, without any contradiction by anyone, that the punishment for Dr. Dooley's shooting would be determined by another jury at another time. Dinkins now seeks to avoid such a determination by another jury at another time.

Dinkins relies on the cases of *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) and *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In its opinion in *Pearce,* the United States Supreme Court held that a defendant's sentence upon a retrial must give credit for time served on the previous sentence. The Court did not bar a higher sentence on retrial, but held that due process prohibits the threat of an increased sentence to discourage appeals, and that valid reasons for increased sentence based on facts occurring since the first sentence must affirmatively appear, and the factual basis for the increased sentence must be made a part of the record.

In *Ashe,* the Supreme Court incorporated collateral estoppel as a constitutional requirement. The Court held that since the same person had robbed a number of poker players and the defendant had been acquitted for the robbery of one of the players he could not be prosecuted for the robbery of the other players.

Dinkins does not make clear what application these two cases have to the facts presented here. He has not been previously tried or punished for the shooting of Dr. Dooley; nor has he been acquitted for the shooting of Paula. We find that Dinkins' prosecution for the shooting of Dr. Dooley is not barred by the doctrine of double jeopardy or collateral estoppel. We overrule his sole point of error.

We affirm the trial court's denial of Dinkins' application for writ of habeas corpus.