**Joseph Willis DINKINS, Appellant,**

v.

**STATE of Texas, State.**

**No. 2–87–175–CR.**

Court of Appeals of Texas, Fort Worth.

Nov. 17, 1988.

Zackery, Hill, Beatty & Butcher and Allan K. Butcher, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., and Betty Stanton, Asst. Crim. Dist. Atty., Fort Worth, for State.

Before BURDOCK, HILL and FARRIS, JJ.

## OPINION

HILL, Justice.

Joseph Willis Dinkins appeals his conviction by a jury for the murder of Dr. Charles Dooley, his wife's paramour. The jury assessed his punishment at twenty-five years in the Texas Department of Corrections. In four points of error, Dinkins urges the trial court erred by refusing to allow the jury to resolve his plea of collateral estoppel; by prohibiting opinion testimony as to the victim's character for provoking another into anger; by prohibiting testimony of specific acts of conduct proving the character of the victim; and by prohibiting evidence of his intent in purchasing a revolver five days before the shooting incident.

We affirm, because we find that there was no fact issue regarding collateral estoppel, since the jury in Dinkins' trial for the fatal shooting of Paula Dinkins, his wife of twenty years, did not necessarily determine whether Dinkins acted with sudden passion arising from an adequate cause in the shooting of Dr. Dooley; because the trial court did not err in excluding evidence concerning Dr. Dooley's character for provoking another into anger because the testimony was not pertinent or, even if it were pertinent, its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury; and because the trial court did not exclude testimony concerning Dinkins' intent in purchasing the murder weapon, since there was never any effort made to have the testimony admitted into evidence.

In point of error number one, Dinkins asserts the trial court erred by refusing to allow the jury to resolve his special plea of collateral estoppel.

On July 4, 1984, upon learning that Paula, his wife of twenty years, was still having an affair with Dr. Charles Dooley, the family's physician, Dinkins went to the doctor's parking lot at a local hospital. Dinkins confronted the doctor with the information he had received that the doctor was about to go pick up Paula. The doctor told Dinkins that Paula was going to leave Dinkins and come live with him, and that the Dinkins' daughter was going to come live with him too. Upon hearing this Dinkins shot Dooley.

After he shot Dooley, Dinkins went to Paula's place of employment, got her to the parking lot under a false pretense, and told her what he had done to Dooley. He shot Paula after she screamed at him that she hated him, that she loved Dooley, and that Dooley was the only one who could give her what she wanted.

Dinkins was convicted of voluntary manslaughter in connection with Paula's death. His punishment was assessed at two years in the Texas Department of Corrections.

Before the start of his trial for the murder of Dr. Dooley, Dinkins filed an application for writ of habeas corpus, alleging that double jeopardy and collateral estoppel barred the subsequent trial on the basis that the jury had considered the murder of Dr. Dooley in assessing punishment for Paula's death. The trial court denied his application and we affirmed the action of the trial court. *Ex parte Dinkins*, 718 S.W.2d 75 (Tex.App.–Fort Worth 1986, no pet.).

Dinkins testified at this trial that his state of mind at the time he shot Paula was exactly as when Dr. Dooley had talked to him—that he was angry like he had never been before. He argues that since he testified at this trial that his state of mind was the same when he shot Dr. Dooley as it was when he shot Paula there is at least a fact issue as to whether the jury which convicted him of voluntary manslaughter for Paula's death necessarily determined as well the issue of his state of mind when he shot Dr. Dooley. He urges the jury in this cause should have been allowed to determine the fact issue as to whether the previous jury necessarily made such a determination. He relies on article 27.07 of the Texas Code of Criminal Procedure, which provides that all issues of fact on a special plea shall be tried by the trier of facts on the trial on the merits.

■ "Collateral estoppel" has been defined as one aspect of the double jeopardy clause requiring "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Senson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970). In order for the doctrine of collateral estoppel to apply, the issue or fact must necessarily have been decided in favor of the defendant in the first trial. *Johnson v. Estelle*, 506 F.2d 347, 350 (5th Cir.), *cert. denied* 422 U.S. 1024, 95 S.Ct. 2619, 45 L.Ed.2d 682 (1975). When a "fact is not necessarily determined in a former trial, the possibility that it may have been does not prevent reexamination of the issue." *Adams v. United States*, 287 F.2d 701, 705 (5th Cir. 1961).

■ The shootings of Dr. Dooley and Paula, although committed by the same person on the same day, occurred under differing circumstances. The jury in the first trial was charged to determine whether Dinkins' action in shooting Paula was based on sudden passion arising from an adequate cause. The issue Dinkins now seeks to foreclose is his state of mind at the time he killed Dr. Dooley. The first jury only determined appellant's state of mind during the killing of Paula. It did not necessarily determine either what his state of mind was when he killed Dr. Dooley or whether his state of mind was the same when he killed both people. Since the first jury did not necessarily determine the fact at issue in his favor Dinkins is thus not entitled to the doctrine of collateral estoppel. *See Johnson*, 506 F.2d at 350; *Adams*, 287 F.2d at 705. We overrule point of error one.

■ Dinkins contends in points of error numbers two and three the trial court erred

by excluding testimony as to Dr. Dooley's character for provoking another into anger. He sought to introduce opinion testimony to the effect that Dr. Dooley had a character trait of making remarks that would provoke another person into anger. He also sought to introduce a specific example of Dr. Dooley acting in accordance with such a character trait upon a different occasion. We find the trial court correctly excluded the offered testimony for the reason the evidence was not pertinent to the issue before the jury and, even if the evidence were pertinent, its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. TEX.R. CRIM.EVID. 402 and 403.

Dinkins urges that we extend the rule which allows one to submit evidence of a victim's violent character, even when that trait of character has not been communicated to the defendant. He relies primarily on rule 404 of the Texas Rules of Criminal Evidence, which provides, subject to certain exceptions in sexual assault cases, that evidence of a pertinent trait of character of the victim of a crime, offered by the accused, is admissible. We note that even in the application of the rule relating to evidence of a victim's violent behavior, the rule Dinkins is asking us to extend, in order for the evidence to be admissible, there must be some act of aggression by the deceased which the character tends to explain (such as drawing a gun or reaching for a pocket where one is usually carried). *Dempsey v. State*, 159 Tex.Cr.R. 602, 266 S.W.2d 875, 878 (1954). There is no indication any argument was ever made that Dr. Dooley said anything on the occasion in question any different than those things Dinkins testified he said. There was therefore nothing for the trait of character to explain and consequently no pertinency as to the deceased's character with respect to the issues of adequate cause or sudden passion. As previously noted, even if the evidence had been pertinent, its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. We overrule points of error numbers two and three.

■ Dinkins contends in point of error four the trial court erred by prohibiting evidence of his intent when he purchased a revolver five days before the shootings. Dinkins sought to introduce the testimony of Esteban Rodriquez, an individual to whom Dinkins had given an inoperative gun which Dinkins owned before he obtained the murder weapon. The record does not reflect the trial court in any way barred the testimony that Dinkins wished to have admitted with respect to his intent in the purchase of the gun. At trial, the following took place:

Q. Now, you say that Joe Dinkins gave you that pistol on that date, and I will ask you how that subject came up to where you were going to get the pistol?

MR. LEVY: Objection. Calls for hearsay.

THE COURT: I'll overrule your objection to that question.

THE WITNESS: I don't remember how we got on the subject, but he asked me if I liked guns and I told him that I did, that I had one at home at least for protection.

MR. LEVY: I'm going to object to any conversations.

THE COURT: I will sustain the objection to the answer.

MR. ZACHRY: Your Honor, at this time, we would ask that the Court admit testimony showing the state of mind as to the pistol on that particular date, approximately a month prior to this time.

[Off-the-record bench discussion.]

THE COURT: All right. I am going to sustain the objection.

Later, in the bill of exceptions, for the first time the witness was asked if Dinkins told him why he was giving him the pistol. The witness responded that Dinkins told him he kept it at home for protection but it did not work anymore, so he was going to get another one at home for protection.

This question was never asked before the jury and there was never any request either in or outside the presence of the jury that this question and answer be admitted into evidence. Consequently, the record

shows no objection to such testimony nor any action of the trial court sustaining such an objection. Therefore nothing is presented for review. *See Aguirre v. State,* 683 S.W.2d 502, 510 (Tex.App.—San Antonio 1984, pet. ref'd). We overrule point of error number four.

The judgment is affirmed.