**Ex parte Jimmy Dean WATKINS.**

**Nos. 1460–01, 1461–01.**

Court of Criminal Appeals of Texas.

April 3, 2002.

**8.** *Id.*

**9.** Tex.Code Crim. Proc. Art. 21.07.

Lisa Mullen, Fort Worth, for Appellant.

Steven W. Conder, Asst. DA, Fort Worth, Matthew Paul, State's Atty., Austin, for State.

## *OPINION*

COCHRAN, J., delivered the opinion of the Court in which MEYERS, PRICE, JOHNSON, and HOLCOMB, JJ., joined.

In this case, we are asked to decide whether the doctrine of collateral estoppel

applies in a subsequent prosecution of appellant for attempted capital murder or attempted murder of his wife's lover, when a prior jury found that appellant killed his wife "in sudden passion" during the same transaction. We find that the doctrine of collateral estoppel does apply, though it does not preclude the State from prosecuting the charged offenses. Therefore, we affirm the decision of the Second Court of Appeals, which held that the State is precluded from re-litigating the issue of sudden passion in the second trial. *Ex parte Watkins,* 52 S.W.3d 858 (Tex.App.-Fort Worth 2001).

## I.

The evidence at the first trial showed that Nancy Watkins, appellant's estranged wife, made her husband move out of their home on December 21, 1998. She remained in the house with their two children. Her lover, Keith Fontenot, moved in that same evening. Through various telephone calls, appellant discovered that Keith and Nancy had made love that night on the living room floor with the children upstairs. The next afternoon, December 22nd, appellant called his wife on his cellular telephone, telling her that he would kill her, kill Fontenot, and then kill himself. A few minutes later, he stormed into the house, still holding his telephone to his ear and carrying a gun. He went past Fonte-

not, who was in the living room, and found Nancy in the kitchen. He shot her twice, but neither wound was fatal. When Fontenot ran into the kitchen and saw Nancy on the floor, appellant began shooting at him. Fontenot was hit in the back and leg, but not seriously injured. As appellant continued to shoot at him, Fontenot ran out the front door and around the side of the house; he leapt over a chain link fence, ran through the back-yard, jumped over another fence into a neighbor's yard, where he collapsed and called for help. He then saw appellant come out of the house, get in his truck and drive off. Appellant had stopped shooting because he thought the gun was out of bullets. Within five minutes, he returned, having discovered that the gun was not out of bullets. Appellant re-entered the house, shot Nancy several more times—this time fatally—and then he drove off again.

At the guilt stage of appellant's trial for his wife's murder, defense counsel argued that appellant did not form *any* intent during this incident, arguing instead that appellant was temporarily insane and was mentally "gone." [1] The jury rejected this argument and convicted Jimmy Dean Watkins of murder. However, during the punishment phase, it was asked to decide whether appellant had murdered his wife "in sudden passion" under Tex. Penal Code § 19.02(d). [2] After lengthy delibera-

---

1. Defense counsel argued, inter alia:

 He absolutely snaps. No premeditation. No thought. No planning. He loses it. No consciousness. No awareness. He is gone. You can't understand that? He was driven there, ladies and gentlemen, by the conduct of the likes of Keith Fontenot. Driven to that end, to protect one of the only things he has, family. Most important of our affairs, family? Children? The man is having sex with his wife on the living room floor with the children in the house.

2. Tex. Penal Code § 19.02(d) reads:

 At a punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.

 This punishment reduction provision was a separate offense, voluntary manslaughter, under the former penal code, Tex. Penal Code § 19.04 (Vernon 1989) (repealed), but, in the 1994 Penal Code, it was converted into a

tion, the jury concluded that Jimmy Dean Watkins had acted under the immediate influence of sudden passion in causing his wife's death and it sentenced him to ten years community supervision. The State then indicted appellant for the attempted capital murder[3] and attempted murder of Keith Fontenot, as well as aggravated assault with a deadly weapon.

Appellant filed a pretrial writ of habeas corpus, alleging that the doctrine of collateral estoppel bars relitigating the issue of his mental state and that the double jeopardy clause bars the State from prosecuting him for the attempted capital murder of Mr. Fontenot. The trial judge denied habeas relief. The Second Court of Appeals affirmed the trial court's denial of relief on appellant's double jeopardy claim, but reversed the trial court's denial of relief on the collateral estoppel issue. *Ex parte Watkins*, 52 S.W.3d 858, 861 (Tex. App.-Fort Worth 2001). The State then filed a petition for discretionary review with this Court, arguing that the court of appeals erred in granting appellant collateral estoppel relief.[4]

## II.

 The doctrine of collateral estoppel is embodied within the constitutional bar against double jeopardy.[5] But the two are not identical.[6] Double jeopardy bars any retrial of a criminal offense, while collateral estoppel bars any retrial of specific and discrete facts that have been fully and fairly adjudicated. Double jeopardy applies only to criminal cases,[7] while collateral estoppel applies in both criminal and

---

punishment issue with the defendant carrying the burden to prove "heat of passion."

3. Specifically, the State charged that appellant, while acting "with the specific intent to commit the offense of capital murder of more than one person during the same criminal transaction, shot Karl Fontenot with a deadly weapon, to-wit: a firearm, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended."

4. The State's sole Ground for Review that this Court granted was:
 Does a jury's finding at the punishment phase of trial that a defendant acted under the influence of sudden passion in murdering one victim preclude the State from litigating the issue of whether he acted under the influence of sudden passion in attempting to murder the second victim.

5. The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense. U.S. CONST. Amend. V. This clause protects against:
 1) a second prosecution for the same offense after acquittal;
 2) a second prosecution for the same offense after conviction; and
 3) multiple punishments for the same offense.

*United States v. Dixon*, 509 U.S. 688, 695–96, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); *Ex parte Herron*, 790 S.W.2d 623, 624 (Tex.Crim. App.1990) (op. on reh'g).

6. Double jeopardy is sometimes called claim preclusion, while collateral estoppel is called issue preclusion. *See generally*, 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §§ 4401–4426 (1981) (defining, discussing, and distinguishing legal doctrines of claim preclusion and issue preclusion); *see also* Comment, *Acquittal in Jeopardy: Criminal Collateral Estoppel and the Use of Acquitted Act Evidence*, 141 U. Pa.L.Rev. 283, 287–97 (1992) (discussing the relationship between the double jeopardy clause and the doctrine of collateral estoppel); *Thirtieth Annual Review of Criminal Procedure: Introduction and Guide for Users: Preliminary Proceedings: Double Jeopardy*, 89 Geo. L.J. 1439, 1462–67 (2001) (discussing doctrine of collateral estoppel).

7. The doctrine of *res judicata* serves the same basic purposes and principles in civil proceedings as double jeopardy does in the criminal context. *See generally*, 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §§ 4401 *et seq.* (1981).

civil proceedings.[8] Thus, cases hinging on the doctrine of double jeopardy do not necessarily apply to a collateral estoppel claim and those hinging on the doctrine of collateral estoppel do not necessarily apply to a claim of double jeopardy. The two doctrines are treated similarly, however, when a collateral estoppel claim is based on the constitutional rule set out in *Ashe v. Swenson.*

■■■ Under this constitutionally based doctrine of collateral estoppel, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."[9] That is, once a jury determines a discrete fact in favor of a criminal defendant, the State cannot contest the jury's finding in a subsequent proceeding.[10] In applying the doctrine of collateral estoppel, courts must first determine whether the jury determined a specific fact, and if so, how broad—in terms of time, space and content—was the scope of its finding. Before collateral estoppel will apply to bar relitigation of a discrete fact, that fact must *necessarily* have been decided in favor of the defendant in the first trial.[11] The mere possibility that a fact *may* have been determined in a former trial is insufficient to bar relitigation of that same fact in a second trial.[12] In each case, courts must review the entire trial record, as well as the pleadings, the charge, and the arguments of the attorneys, to determine "with realism and rationality" precisely which facts the jury *necessarily* decided and

---

**8.** *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *see generally* Restatement (Second) of Judgments § 27 ("Issue Preclusion") (defining general rule of issue preclusion applicable in both civil and criminal proceedings); *Cf.* 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4421, p. 192 (1981) ("Issue preclusion attaches only to determinations that were necessary to support the judgment entered in the first action").

**9.** *Ashe,* 397 U.S. at 443, 90 S.Ct. 1189; *see also State v. Lee,* 15 S.W.3d 921, 929 (Tex. Crim.App.2000) (concurring op.) ("if a verdict at trial necessarily includes the determination of an ultimate fact issue in the defendant's favor, and if proof of that issue is necessary for the prosecution to convict the defendant in a subsequent proceeding, then the prosecution is estopped from relitigating that issue, and the defendant is acquitted of that offense"); *Reynolds v. State,* 4 S.W.3d 13, 23 (Tex.Crim.App.1999) (defining and discussing constitutional doctrine of collateral estoppel); *Ex parte Mathes,* 830 S.W.2d 596, 598 (Tex. Crim.App.1992).

**10.** In *Ashe v. Swenson,* for example, several armed and masked men broke into a home and robbed six men who were playing poker. 397 U.S. at 437–39, 90 S.Ct. 1189. The de-fendant was acquitted at his first trial for the robbery of one of the victims, but was subsequently convicted in a second trial for the robbery of another poker player. *Id.* At both trials, the evidence that an armed robbery had occurred was "unassailable," *id* at 438, 90 S.Ct. 1189, and the Supreme Court determined that the "single rationally conceivable issue in dispute before the jury was whether the [defendant] had been one of the robbers." *Id.* at 445, 90 S.Ct. 1189. In reversing the defendant's conviction, the Court held that the State was barred by the Double Jeopardy Clause from litigating the issue of identity at the second trial after a prior judgment acquitting the defendant based on that same issue. *Id.* at 445, 90 S.Ct. 1189.

**11.** *De La Rosa v. Lynaugh,* 817 F.2d 259, 263 (5th Cir.1987); *United States v. Gonzalez,* 548 F.2d 1185, 1191 (5th Cir.1977); *Garcia v. Garza,* 729 F.Supp. 553, 554 (S.D.Tex.1989); *State v. Nash,* 817 S.W.2d 837, 840 (Tex.App.Amarillo 1991, pet. ref'd).

**12.** *Ladner v. State,* 780 S.W.2d 247, 258 (Tex. Crim.App.1989) ("When a 'fact is not necessarily determined in a former trial, the possibility that it may have been does not prevent re-examination of that issue.' ") (quoting *Adams v. United States,* 287 F.2d 701, 705 (5th Cir.1961)).

whether the scope of its findings regarding specific historical facts bars relitigation of those same facts in a second criminal trial.[13]

A general verdict returned in the guilt phase of a criminal trial frequently makes it difficult to determine precisely which historical facts a jury found to support an acquittal. This task is considerably less difficult when a jury is given special fact issues to determine.[14] Some of these discrete factual issues are submitted to the jury at the guilt stage, while others are submitted at the punishment stage.[15] On some of these factual issues, the State has the burden to prove the fact beyond a reasonable doubt, while on others the defendant has the burden to prove the fact by a preponderance of the evidence.[16] The essential common characteristic is that the jury has found a specific, discrete historical fact. If the jury decides that fact in the defendant's favor, the doctrine of collateral estoppel bars the State from relitigating it in a second criminal trial.

## III.

In this case, the jury was given a special issue at the punishment phase which specifically asked whether Jimmy Dean Watkins acted in the heat of sudden passion when he murdered his wife.[17] The jury answered yes. Thus, the jury *necessarily* found that appellant acted in the heat of sudden passion when he murdered his wife. That fact cannot be relitigated. It is barred by collateral estoppel. A finding that appellant was acting under the immediate influence of sudden passion when he fatally shot his wife does not, of course, *necessarily* mean that the jury determined appellant was acting under that same influence approximately five minutes earlier when he shot Keith Fontenot.

In its petition for discretionary review, however, the State did not claim that, even if the doctrine of collateral estoppel *does* apply to the issue of "sudden passion," these particular facts in this particular case nonetheless do not give rise to a collateral estoppel bar. Thus, we are not called upon to decide whether a rational

---

**13.** *Ashe*, 397 U.S. at 444, 90 S.Ct. 1189.

**14.** In Texas, for example, jurors may be given special issues on whether the defendant: 1) used a deadly weapon at the time of the offense, Tex. Penal Code § 12.35(c)(1); 2) was motivated by a particular bias or prejudice in committing the offense, Tex. Penal Code § 12.47; 3) acted in the heat of sudden passion at the time he murdered someone, Tex. Penal Code § 19.02(d); 4) voluntarily released a kidnap victim in a safe place, Tex. Penal Code § 20.04(d); 5) is the same person as that convicted in a prior case as set out in an enhancement paragraph, Tex. Penal Code § 12.42; or 6) was insane at the time he committed the offense, Tex. Penal Code § 8.01(a).

**15.** *See supra*, note 14.

**16.** An ultimate issue of fact determined in a prior criminal trial *can* be relitigated between the same parties if the burden of proof is

lighter in the second proceeding. *See One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 235, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) (noting that the difference between the burden of proof in criminal and civil trials prevents application of collateral estoppel in subsequent civil trial *after acquittal on specific fact in criminal case with "beyond a reasonable doubt" standard). However, if the burden of proof in the second trial is exactly the same as in the first trial, it matters not which party carries the burden or whether it is a burden "by preponderance of the evidence" or "beyond a reasonable doubt." *See* 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4422 (1981).

**17.** After defining certain terms, the special issue read:

"Do you find by a preponderance of the evidence that the defendant caused the death of Nancy Watkins while under the immediate influence of sudden passion arising from an adequate cause?"

trier of fact could have found that appellant's "sudden passion" state of mind at the time he murdered his wife was or could be different at the time he shot Keith Fontenot.[18]

■ Instead, the State, relying primarily upon the Supreme Court's decision in *Monge v. California*,[19] argues that the doctrine of collateral estoppel simply does not apply to any punishment fact or issue, period. *Monge*, however, concerns the doctrine of double jeopardy, not collateral estoppel,[20] and moreover, the Supreme Court's decision in *Apprendi v. New Jer-*

*sey*[21] has sharply limited *Monge's* application.

In *Monge*, a sharply divided Supreme Court held that the double jeopardy clause does not bar retrial on a prior conviction allegation in the noncapital sentencing context.[22] There the trial judge had found that the defendant had two prior convictions for "serious" felonies and sentenced Monge under California's "three strikes" law.[23] An intermediate appellate court, however, found that the sentencing proceeding did not contain proof beyond a reasonable doubt that the defendant had personally inflicted great bodily injury or

---

**18.** In *De La Rosa*, the Fifth Circuit *was* required to decide whether a jury determination in the first murder trial that the defendant acted under the influence of sudden passion collaterally estopped relitigation of the issue of "sudden passion" in a subsequent trial for murder of a second victim. 817 F.2d at 263–64. In that case, the court addressed whether a rational jury could have found a change in defendant's state of mind between firing the shot which killed the first victim and firing the shot which killed the second victim. *Id.* at 263. The incident took place in a crowded bar during a melee. *Id.* at 264–65. The fatal shots were "almost simultaneous"; they were not "removed from each other by considerable time, distance, and circumstances." *Id.* at 266. The Fifth Circuit held that collateral estoppel did bar relitigation of the "sudden passion" issue because the record reflected no evidence or argument to support a conclusion that the defendant's state of mind changed, and it found that the two criminal acts evolved from the same criminal episode without sufficient separation to base a finding of changed intent. *Id.* As explained by the court in *De La Rosa:* "[t]he relevant inquiry here remains whether sufficient evidence exists for a rational trier of fact to find that the defendant's state of mind did change between the criminal acts." *Id. See also Green v. Estelle,* 601 F.2d 877, 879 (5th Cir.1979) (collateral estoppel barred relitigation of defendant's state of mind—murder without malice—when two victims were killed almost simultaneously); *compare Douthit v. Estelle,* 540 F.2d 800, 805–06 (5th Cir.1976) (collateral estoppel did not bar relitigation of alleged three rapes of same woman over course of 22 hours; acquit-

tal could have been based on a change in the woman's consent); *Dinkins v. State,* 760 S.W.2d 374, 376 (Tex.App.-Fort Worth 1988, pet. ref'd) (collateral estoppel did not bar relitigation of defendant's "sudden passion" state of mind when shootings, although committed by the same person on the same day, occurred under differing circumstances, at different places, separated by significant time).

**19.** 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998).

**20.** In *Monge,* the Supreme Court never mentioned the doctrine of collateral estoppel or its earlier decision in *Ashe v. Swenson.* However, in *United States v. Bailin,* 977 F.2d 270 (7th Cir.1992), the Seventh Circuit emphatically rejected the government's assertion "that collateral estoppel can never apply in circumstances where double jeopardy does not." *Id.* at 275. As the court stated:

Such a holding would eliminate collateral estoppel from criminal cases and overrule *Ashe.* ... Precisely contrary to the government's assertion, collateral estoppel is applicable in criminal cases *only when double jeopardy is not.*

*Id.* (emphasis in original).

**21.** 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

**22.** 524 U.S. at 734, 118 S.Ct. 2246.

**23.** *Id.* at 725, 118 S.Ct. 2246.

used a deadly weapon during one of these prior offenses and that double jeopardy principles forbade the state from a retrial on the enhancement.[24] The Supreme Court disagreed, noting that "[h]istorically we have found double jeopardy protections inapplicable to sentencing proceedings . . . because the determinations at issue do not place a defendant in jeopardy for an 'offense.'"[25] Sentencing decisions favorable to a defendant, therefore, cannot generally be analogized to an acquittal of a criminal offense which would invoke the double jeopardy bar.[26] But neither the reasoning nor result in *Monge* applies to a jury finding of a specific and discrete historical fact. A fact is a fact, regardless of whether it is determined during the guilt stage of a criminal trial or the punishment stage. As noted above, double jeopardy bars the retrial of a claim or offense in its entirety, while collateral estoppel bars only relitigation of a discrete historical fact which has been previously determined.

Moreover, the reach of *Monge* was significantly curtailed by a sharply divided Court in *Apprendi* two years later. In the later case, the Supreme Court discussed the New Jersey "hate crime" enhancement statute and held that any specific "fact" that increases a criminal defendant's sentence must be decided, beyond a reasonable doubt, by a jury.[27] The Court distanced itself from *Monge*, noting that the double jeopardy principles as applied to prior enhancements are perhaps *sui generis* and that prior Supreme Court cases addressing recidivism statutes did not challenge the accuracy of the specific facts decided in those cases.[28] Although *Apprendi* concerned only facts which *increase* a sentence, there is no logical reason to suppose that facts which *decrease* a sentence are less "factual" or less capable of being fully and finally adjudicated that those which increase the sentence.

In sum, *Monge* concerned the doctrine of double jeopardy rather than collateral estoppel and the decision in that case appears to be confined to double jeopardy dealing with prior convictions, not other punishment facts. With those two caveats, this and other Texas courts have followed *Monge.*[29]

24. *Id.* at 725–26, 118 S.Ct. 2246.

25. *Id.* at 728, 118 S.Ct. 2246.

26. *Id.* at 729, 118 S.Ct. 2246. "We have held that where an appeals court overturns a conviction on the ground that the prosecution proffered insufficient evidence of guilt, that finding is comparable to an acquittal, and the Double Jeopardy Clause precludes a second trial. . . . Where a similar failure of proof occurs in a sentencing hearing, however, the analogy is inapt. The pronouncement of sentence simply does not 'have the qualitites of constitutional finality that attend an acquittal.'" *Id.* (citations omitted).

27. In *Apprendi*, the Court held:
Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that [*Jones v. United State,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)] case: "It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348.

28. *Id.* at 488, 120 S.Ct. 2348 (discussing and distinguishing *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), and noting that the defendant in that case "did not challenge the accuracy" of the "fact" of his prior conviction).

29. *See, e.g., Bell v. State,* 994 S.W.2d 173, 175 (Tex.Crim.App.1999) (following *Monge* and stating that federal double jeopardy principles

The State also argues that because "sudden passion" is no longer a guilt/innocence fact, but rather a mitigating punishment fact, it is not a fact that is subject to collateral estoppel.[30] This position does not make sense logically or legally. It also poses the risk expressed by Justice Scalia in his dissent in *Monge*: it raises the "sinister" specter of reconfiguring all criminal offenses into punishment facts to avoid any potential collateral estoppel or double jeopardy prohibition, as well as dispensing with proof beyond a reasonable doubt, right to a jury trial, etc.[31] The State offers no logical rationale to explain why a specific fact decided at the punishment stage is any less of a fact than one decided at the guilt/innocence stage, nor does it

offer any precedent in support of its position.[32]

Finally, the State argues that collateral estoppel should not apply to a punishment fact because both the State and defendant might offer more or different evidence than they did at the first trial. In the second go-around, the State might "cross-examine, rebut or impeach pivotal defense 'sudden passion' witnesses" differently than it had before. True enough. But that is precisely the purpose of the double jeopardy and collateral estoppel prohibition: the State has one full and fair opportunity to prove its case and all discrete facts that support conviction and punishment. The first trial is not a try-out on the road to a second, third, or fourth.[33]

---

allow the State "a second chance to present proof of the prior burglary conviction"); *State v. Webb*, 980 S.W.2d 924, 927 (Tex.App.-Fort Worth 1998, pet. ref'd) (following *Monge* and concluding that enhancement allegations "do not place a defendant in jeopardy of being tried twice for an 'offense' or constitute an additional punishment for the previous offense"); *compare State v. Atwood*, 16 S.W.3d 192, 194 (Tex.App.-Beaumont 2000, pet. ref'd) (distinguishing *Monge* because proof of prior conviction was not a mere punishment enhancement, but a jurisdictional element raising primary offense from a misdemeanor to a felony).

**30.** The State argues:
> To permit the appellant to claim collateral estoppel on an issue for which he retains the burden of proof would eradicate his statutorily-imposed burden and create a situation akin to the State claiming that a defendant was collaterally estopped from defending his prosecution for an offense where he had already been convicted of another offense in the same criminal transaction.

Again, the State confuses the distinct concepts of collateral estoppel and double jeopardy.

**31.** *See Monge*, 524 U.S. at 738, 118 S.Ct. 2246 (Scalia, J., dissenting) (setting out the hypothetical in which the legislature repeals all of its violent crimes and replaces them with one crime, "knowingly causing injury to another,"

bearing a penalty of 30 days in jail, but then creating innumerable punishment enhancements depending upon the severity of the injury, the *mens rea*, and other circumstances, with sentences ranging up to life in prison or execution).

**32.** The State appropriately distinguishes *Ex parte Mathes*, 830 S.W.2d 596 (Tex.Crim.App. 1992), in which this Court held that collateral estoppel prevented the State from seeking to relitigate the issue of "future dangerousness" in a second capital murder trial when the first jury had determined that, based upon the evidence presented, the defendant did not pose a threat of future dangerousness. In that case, as the State aptly points out, the prosecution had stipulated that the evidence on future dangerousness would be the same in the second as in the first trial. The issue of future dangerousness, however, is not an immutable historical fact. Intervening events, acts, and conduct between a first capital murder trial and a second one might demonstrate that a person is likely to be more or less dangerous in the future than previously supposed. Thus, while collateral estoppel might, in a particular case, bar relitigation of the issue of future dangerousness, it might not.

**33.** *See Ashe v. Swenson*, 397 U.S. at 447, 90 S.Ct. 1189 (" 'No doubt the prosecutor felt the state had a provable case on the first charge and, when he lost, he did what every good

## IV.

■ The dissent suggests that we should, on our own motion, conclude that this collateral estoppel issue is not cognizable on a pretrial. writ of habeas corpus, even though neither the State nor appellant has ever argued that issue and neither the trial court nor the court of appeals addressed that issue. Although the dissent makes good arguments, those arguments ought not apply in this situation.

■ First, a claim of collateral estoppel which is based upon constitutional double jeopardy principles *is* cognizable on a pretrial writ of habeas corpus, as is any double jeopardy claim.[34] In *Abney v. United States*,[35] the Supreme Court observed that the preferred procedural vehicle for review of a double jeopardy claim was a pretrial writ of habeas corpus because:

> [T]he rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence. To be sure, the Double Jeopardy Clause protects against being twice convicted for the same crime, and that aspect of the right can be fully vindicated on appeal following final judgment, as the Government suggests. However, the Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to trial for the same offense.[36]

The same logic and law apply to a collateral estoppel claim based on double jeopardy.[37] When is a collateral estoppel claim based on double jeopardy principles? When the State could, but declines to, join two offenses which arise out of a single transaction and a final verdict or specific factual finding favorable to the defendant in the first prosecution would bar relitigation of the same fact in a second proceeding.[38]

The cases on which the dissent relies in arguing that a habeas corpus claim is not cognizable unless it will result in "immediate release" do not involve this type of double jeopardy or collateral estoppel claim.[39] Certainly, in many double jeopar-

---

attorney would do-he refined his presentation in light of the turn of events at the first trial.' But this is precisely what the constitutional guarantee forbids").

34. *See Stephens v. State,* 806 S.W.2d 812, 814 (Tex.Crim.App.1990) ("the pretrial writ of habeas corpus is an appropriate remedy to review a double jeopardy claim"); *Ex parte Rathmell,* 717 S.W.2d 33, 34 (Tex.Crim.App. 1986).

35. 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

36. 431 U.S. at 660–61, 97 S.Ct. 2034.

37. *See Headrick v. State,* 988 S.W.2d 226, 228 (Tex.Crim.App.1999) ("[i]n situations like *Ashe* it is appropriate to apply for [a] pretrial writ of habeas corpus advancing arguments concerning collateral estoppel and constitu-

tional double jeopardy violations"); *Ex parte Robinson,* 641 S.W.2d 552, 555 (Tex.Crim. App.1982) (recognizing cognizability of double jeopardy based collateral estoppel claims on pretrial habeas writ but rejecting specific contention made in particular case).

38. *See Ashe v. Swenson,* 397 U.S. at 443, 90 S.Ct. 1189; *see generally* 4 LaFave, Israel & King, Criminal Procedure § 17.4(a) at 633 (2d ed.1999); Rodriguez, *Appellate Review of Pretrial Requests for Habeas Corpus Relief in Texas,* 32 TEX. TECH L.REV. 45, 71 (2000).

39. In *Headrick v. State,* this Court explicitly stated that an *Ashe v. Swenson* claim *is* cognizable on a pretrial writ of habeas corpus. 988 S.W.2d at 228. In *Headrick,* however, the defendant was attempting merely to exclude evidence which had been the subject of an earlier driver's license revocation administrative hearing. *Id.* at 227. That situation

dy claims, the habeas petitioner will not receive any "immediate release" even if he prevails on his claim. For example, a person who asserts his fundamental right not to be punished again for the same offense when he has already been sentenced for that offense will not be "immediately released" if he prevails.[40] His relief is nonetheless significant, in that he will only serve one sentence for one crime, not two sentences for that one crime. The dissent cites no double-jeopardy or *Ashe v. Swenson* collateral estoppel precedent for its conclusion that a pretrial writ of habeas corpus claim is not cognizable unless it will result in the "immediate release" of the applicant.

Of course, the reverse is equally true: we cite no precedent that holds that a collateral estoppel claim may be brought via a pretrial writ of habeas corpus when relief would not result in "immediate relief," i.e., the dismissal of charges. However, we do note that at least some federal courts *have* addressed collateral estoppel issues in a pretrial forum even though a favorable resolution of the matter did not result in dismissal of charges.[41] Because the very purpose of collateral estoppel is to bar to relitigation of a particular fact

does not raise an *Ashe v. Swenson* claim—the relitigation in a second trial of a specific fact that has been fully and finally decided in an earlier trial of the same event. *Id.* at 228. In *Ex parte Weise,* 55 S.W.3d 617, 619 (Tex.Crim. App.2001), the issue presented on pretrial habeas was the purported unconstitutionality of a penal statute which failed to specify a culpable mental state. Again, that is not an *Ashe v. Swenson* situation. In *Ex parte Ruby,* 403 S.W.2d 129, 130 (Tex.Crim.App.1966), this Court held, in a one page opinion without citing any legal authority, that Jack Ruby was not entitled to a post-trial, pre-appeal writ of habeas corpus concerning his competency to decide whether to retain his trial attorney for purposes of appeal, because any decision would not result in his "immediate release." Again, that is not an *Ashe v. Swenson* situation raising double jeopardy-collateral estoppel issues. These constitutional issues have *always* been cognizable on a pretrial writ of habeas corpus and this Court, most recently in our 1999 *Headrick* decision, has explicitly stated they are cognizable on a pretrial writ. 988 S.W.2d at 228.

**40.** Under TEX.CODE CRIM. PROC. art. 11.01, a writ of habeas corpus is "the remedy to be used when any person is restrained in his liberty." Under art. 11.22, " 'restraint' [means] the kind of control one person exercises over another, not to confine him within certain limits, but to subject him to the general authority and power of the person claiming such right." Appellant is being "restrained" in this sense by the pending indictment charging him with the attempted murder of Keith Fontenot and attempted capital murder of Keith Fontenot and Nancy Watkins. Thus, in a legal sense, he is seeking "immediate release" from a second degree punishment for attempted murder or a first degree punishment for attempted capital murder. *See also* Rodriguez, 32 TEX.TECH L.REV. at 48–49 (discussing Texas definition of "confinement" and "restraint" for purpose of pretrial habeas writs).

**41.** *See, e.g., United States v. Bailin,* 977 F.2d 270 (7th Cir.1992) (addressing merits of double jeopardy and collateral estoppel claims via pretrial interlocutory appeal by both defendants and government even though defendants were not entitled to dismissal of charges under their collateral estoppel claim). In *Bailin,* the Seventh Circuit held that collateral estoppel barred the government from relying upon acquitted offenses as predicate acts for substantive RICO violations in a prospective second trial. *See also United States v. Shenberg,* 828 F.Supp. 968, 975 (S.D.Fla. 1993) (resolving collateral estoppel issues prior to second trial and stating that "[h]ere, as in *Bailin,* the defendants are not using direct estoppel as a sword to prevent the government from having its one full opportunity to prosecute, but as a shield to prevent the government from having an opportunity to relitigate issues which were already decided in the first trial. As *Bailin* teaches, the government should not have the opportunity to relitigate those issues which have already been decided against it. Accordingly, the law will not permit the parties to start over and retry issues already decided").

which has already been fully and finally decided, it seems the better course to address the constitutional issue pretrial, especially since neither the State nor the lower courts in this case contended that pretrial habeas review was improper.

The dissent next argues that a determination that collateral estoppel bars the relitigation of the "sudden passion" issue in any subsequent prosecution of appellant "does not impede the prosecution." Yes and no. The State certainly may prosecute appellant for attempted murder or attempted capital murder, but it may not relitigate the issue of sudden passion.[42]

The dissent concludes that "evaluation of the merits may be assisted by factual development of the record," meaning another trial with new, more and better evidence offered by the State. But that is *precisely* what the principle of double jeopardy-collateral estoppel bars. The State is not entitled to a second opportunity to prove what it failed to prove in the first trial.[43]

## V.

In sum, we conclude that collateral estoppel bars the State from relitigating the issue of "sudden passion" in a trial concerning the shooting of Keith Fontenot,

because the jury in the first trial found that appellant acted under "sudden passion" in murdering his wife and because the State did not claim, or indicate any evidence to show, that a rational jury could conclude that appellant's state of mind changed in the five minutes between the two shootings.

Therefore, we affirm the decision by the Second Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

KELLER, P.J., filed a dissenting opinion in which WOMACK, KEASLER and HERVEY, JJ., joined.

KELLER, Presiding Judge, dissenting.

We should grant review on our own motion[1] and vacate the Court of Appeals's decision because the claim before us is not cognizable on pretrial habeas corpus.

This Court has consistently held that "a pretrial writ application is not appropriate when resolution of the question presented, even if resolved in favor of the applicant, would not result in immediate release."[2] In *Headrick*, the defendant sought to use the doctrine of collateral estoppel to exclude evidence.[3] In holding that such a

---

**42.** *See Mims v. State*, 3 S.W.3d 923, 924 (Tex. Crim.App.1999) (concluding that if sudden passion is shown in attempting to cause the death of an individual, the "offense" attempted is second-degree murder, and hence, the attempt offense of attempted second-degree murder is a felony of the third degree). Under the reasoning of *Mims*, a person convicted of attempted capital murder may be punished only for a second degree offense if it has already been proven that he was acting in sudden passion. And one convicted of attempted murder could be punished only within a third degree felony punishment range. Although the State may *prosecute* for these two offenses, the *punishment* level would drop one degree for either because appellant's "heat of passion" state of mind has already been established.

**43.** Or, as in the present situation, the State is not entitled to a second opportunity to attempt to disprove what appellant has already proven—by a preponderance of the evidence—that the shootings were committed in the heat of sudden passion.

**1.** Tex.R.App. P. 67.1.

**2.** *Ex Parte Weise*, 55 S.W.3d 617, 619 (Tex. Crim.App.2001); *see also Headrick v. State*, 988 S.W.2d 226, 228 (Tex.Crim.App.1999); *Ex Parte Ruby*, 403 S.W.2d 129, 130 (Tex. Crim.App.1966).

**3.** 988 S.W.2d at 228.

claim was not cognizable on a pretrial application, we observed that "[t]he State and Appellant agree that even if Appellant were entitled to the relief she seeks, the State would not be prevented from pursuing the pending prosecution." [4]

Likewise, resolving appellant's collateral estoppel claim in his favor does not result in his immediate release. Mandating an affirmative answer to the "sudden passion" issue [5] does not impede the prosecution. The State is still entitled to prosecute appellant for attempted capital murder and attempted murder, and if he is found guilty, a factfinder would still be required to determine punishment. And, if appellant is convicted of attempted *capital* murder, the trial court will not even have an occasion to submit the "sudden passion" issue.[6]

Although the present case alleges a double jeopardy-based claim, rather than the mere evidentiary claim advanced in *Headrick*, pretrial habeas cognizability is not assured simply because a claim may be based upon double jeopardy principles.

Not all double jeopardy claims are cognizable on a pretrial writ application.[7] While we have before addressed on pretrial habeas the merits of a double jeopardy-based collateral estoppel claim, that claim, if granted would have resulted in the defendant's immediate release.[8]

The Court correctly observes that I have cited no double jeopardy cases that specifically say a double jeopardy claim is not cognizable on a pre-trial writ if granting relief would not result in immediate release. I am aware of none. By the same token, I am aware of no cases that say a double jeopardy claim *is* cognizable if granting relief would not result in immediate release, and the Court has cited none. From the above discussion, however, we can see two well-established elements of our caselaw that run contrary to cognizability here: (1) We have *never* granted relief on a pretrial writ of habeas corpus in a form other than immediate release. The present case would be the first instance of doing so. (2) Not all double jeopardy claims are cognizable on a

---

4. *Id.*

5. *See* Tex. Pen.Code § 19.02(d).

6. A capital murder defendant is not entitled to the submission of the "sudden passion" issue at guilt, and if convicted of capital murder, is not entitled to the issue's submission at punishment. *Wesbrook v. State*, 29 S.W.3d 103, 112–113 (Tex.Crim.App.2000). Although "sudden passion" can be an issue in an attempted murder prosecution, *Mims v. State*, 3 S.W.3d 923 (Tex.Crim.App.1999), its applicability is due to the derivation of attempted murder from murder. Because the "sudden passion" issue is not applicable to capital murder, it would likewise be inapplicable to attempted capital murder.

The Court is incorrect in contending that *Mims's* reasoning supports a conclusion that a finding of sudden passion in a murder case reduces the punishment range of a subsequent conviction for the attempted *capital*

murder of a separate victim. When a defendant attempts to kill two people, he is attempting to commit a capital murder. Under *Wesbrook*, "sudden passion" does not reduce a capital murder to a lesser crime. That capital murder is built upon first degree murder is immaterial. If the State proves the additional elements required to establish capital murder, then "sudden passion" simply does not constitute a partial excuse to the crime, as it would if the State had proved only ordinary murder. The Legislature is within its prerogative to set a factor that is mitigating as a matter of law with respect to one offense, but not with respect to a greater offense.

7. *Gonzalez v. State*, 8 S.W.3d 640, 643 n. 9 (Tex.Crim.App.2000).

8. *Ex Parte Robinson*, 641 S.W.2d 552, 555–556 (Tex.Crim.App.1982)(magistrate at examining trial found no probable cause to bind the defendant over for grand jury).

pretrial writ. The Court's assertion that multiple punishment claims are cognizable runs contrary to recent statements made in *Gonzalez*.[9] Since some double jeopardy claims are not cognizable on a pretrial writ, and the present double jeopardy claim lacks a feature that has been required in every other case that has come before us, the obvious conclusion is that this double jeopardy claim is of the type that is not cognizable.

Nor does denying cognizability here threaten the interests underlying the Double Jeopardy Clause. As the Court notes, the point of permitting a pretrial writ is to protect the defendant from being tried. A grant of relief in this case serves no such purpose: appellant will still be tried for this crime, and there will still be a punishment phase at the trial.

The State has not raised the issue, but we should not be bound by the State's failure in this regard. I view cognizability as an absolute requirement that is independent of the litigants' wishes.[10] In a given case, both parties may desire to have an appellate court address the viability of potential punishment issues, but that desire would not give them the ability to foist upon appellate courts issues that are not cognizable at the time they are raised in

order to procure advisory opinions. As with preservation of error,[11] cognizability is an issue that ought to be raised by a first-level appellate court on its own motion.

As a second-level appellate court, we are not required to address a systemic issue not raised by the State in its petition,[12] but in this case we should. An opinion granting relief at this juncture would be purely advisory, and we may find that we have granted relief on an issue that does not even arise in the case. Moreover, evaluation of the merits may be assisted by factual development of the record. At the second trial, the parties may introduce evidence on the issue of sudden passion that was not introduced at the first trial. Assuming *arguendo* that we decline to distinguish between claims on the basis of who has the burden of proof, the question to be confronted would then be whether the new evidence has its genesis in the facts of the previously tried offense or is derived in some unique way from the facts of the separate offense. At this time, we are not in the best position to evaluate the legitimacy of such new evidence, and we should not require the State or appellant to give a preview of its case under the guise of habeas corpus.[13] Finally, issuing a pub-

9. *See* footnote 7.

10. *See Marin v. State,* 851 S.W.2d 275, 279 (Tex.Crim.App.1993).

11. *Jones v. State,* 942 S.W.2d 1, 2 n. 1 (Tex. Crim.App.1997); *Hughes v. State,* 878 S.W.2d 142, 151 (Tex.Crim.App.1992)(on rehearing).

12. *See Jones,* 942 S.W.2d at 2 n. 1.

13. The Court contends that offering "new, more, and better evidence" is precisely what the principle of double jeopardy-collateral estoppel bars. That contention is correct only if the existence of sudden passion in one offense resolves the question of the existence of sudden passion in the other. In *Ashe v. Swenson,*

collateral estoppel applied because, "The single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers." 397 U.S. 436, 445, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). If a jury could rationally conclude that appellant acted under the influence of sudden passion as to the victim in the first prosecution but not as to the victim in the second, then double jeopardy-collateral estoppel would not bar litigation on the sudden passion issue in the second trial. For example, if appellant had been prosecuted in the first trial for the murder of the first victim, then in the second trial for the murder of the second victim, the State might have been able to claim that appellant had "cooled off" and was no longer under the influence of sudden passion when the second

lished opinion addressing the merits of this claim risks misleading future litigants and appellate courts into believing that this type of claim is cognizable in a pretrial habeas application.

For these reasons, I would grant review on the Court's own motion, vacate the judgment of the Court of Appeals, and remand the case with instructions to dismiss the application.

I respectfully dissent.

victim was killed. The actual circumstances present here are that the second killing was prosecuted first. To show a different factual basis, the State would likely have to prove that the defendant's emotional state escalated between the killings so that appellant was capable of cool reflection when he killed the first victim but became incapable of cool reflection when he killed the second. That could be a much harder sell than the cooling off scenario, but it is a possibility nonetheless, and we cannot determine on this record that collateral estoppel would bar consideration of sudden passion relating to the second victim.