**Opinion filed June 14, 2018**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00332-CR
_____

## EX PARTE BRANDON JOSEPH ADAMS

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 26,815-A**

### O P I N I O N

This is an appeal from the denial of a pretrial application for writ of habeas corpus. Brandon Joseph Adams stands charged by indictment with the offense of aggravated assault of Joe Jeremy Romero. Adams filed an application for writ of habeas corpus in this case based upon a jury's acquittal of Adams for the offense of aggravated assault in a companion case in which Joe's brother, Justin Paul Romero, was the complainant. Adams sought to have the pending indictment dismissed on double jeopardy grounds based on the doctrine of collateral estoppel. The trial court held a hearing and denied the relief requested by Adams. We reverse and remand with instructions to grant habeas relief.

In a single issue on appeal, Adams contends that the trial court erred when it denied habeas relief. Adams argues that the doctrine of collateral estoppel, as embodied in the Double Jeopardy Clause of the Fifth Amendment, bars prosecution in this cause. *See* U.S. CONST. amend V. The Supreme Court determined years ago that the doctrine of collateral estoppel is embodied within the Fifth Amendment's guarantee against double jeopardy. *Ashe v. Swenson*, 397 U.S. 436, 445 (1970). When "an issue of ultimate fact" has been determined by a valid and final judgment, collateral estoppel prohibits that issue from again being litigated between the same parties in any future lawsuit. *Id.* at 443. At a minimum, collateral estoppel as applied in a criminal case "protects a man who has been acquitted from having to 'run the gantlet' a second time." *Id.* at 446 (quoting *Green v. United States*, 355 U.S. 184, 190 (1957)). Collateral estoppel has been held to require not only that the precise fact litigated in the first prosecution have arisen in the same transaction, occurrence, situation, or criminal episode that gives rise to the second prosecution, but also that the fact previously litigated be an essential element of the subsequent offense. *See Murphy v. State*, 239 S.W.3d 791, 795 (Tex. Crim. App. 2007); *Ex parte Taylor*, 101 S.W.3d 434, 441 (Tex. Crim. App. 2002); *see also York v. State*, 342 S.W.3d 528, 545–46, 551–52 (Tex. Crim. App. 2011).

In a habeas corpus appeal, we generally review the facts in the light most favorable to the trial court's ruling and uphold that ruling absent an abuse of discretion. *See Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999) (citing *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997)). We afford almost total deference to a trial court's determination of historical facts and also to mixed questions of law and fact when the resolution of those questions turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. However, if the trial court was "not in an appreciably better position" than this court to make such a determination, a de novo review is appropriate. *Martin*, 6 S.W.3d at 526

2

(quoting *Guzman*, 955 S.W.2d at 87). Thus, we review de novo any mixed questions of law and fact that do not depend upon credibility and demeanor. *Martin*, 6 S.W.3d at 526; *Guzman*, 955 S.W.2d at 89.

To apply the doctrine of collateral estoppel, courts must first determine "whether the jury determined a specific fact, and if so, how broad—in terms of time, space and content—was the scope of its finding." *Ex parte Watkins*, 73 S.W.3d 264, 268 (Tex. Crim. App. 2002). Collateral estoppel bars relitigation of a discrete fact if that fact must necessarily have been decided in favor of the defendant in the first trial. *Id.*; *Kent v. State*, No. 11-12-00308-CR, 2013 WL 6583969, at *1 (Tex. App.—Eastland Dec. 13, 2013, pet. dismissed, untimely filed) (mem. op., not designated for publication). In the case before us, we must review the entire trial record to determine precisely what fact or combination of facts the jury necessarily decided when it acquitted Adams and whether such fact or facts bar relitigation in a second trial. *See Taylor*, 101 S.W.3d at 441.

The reporter's record from the September 2017 trial that ended in an acquittal was introduced as an exhibit during the hearing on Adams's habeas application. The record from that trial reveals that various witnesses, including both Romero brothers, testified for the State and that Adams and the other person involved in the altercation, Luke Hisey, testified for the defense. The uncontroverted evidence revealed that Justin and Hisey exchanged words and then engaged in a physical fight with each other. The fight ended when Adams stabbed both Justin and Joe with a knife. Adams readily admitted that he stabbed both Justin and Joe with a knife, but he claimed that he did so to protect himself and Hisey. According to Adams, Hisey was lying on the ground, "out cold," and "Justin was just on top of him, pummeling him." Joe interfered with Adams's attempt to break up the fight and told Adams to "[l]et them fight." By all accounts, the entire incident did not last very long, and Joe and Justin were stabbed in quick succession.

The jury was charged on the offense of aggravated assault and on the defense of "Defense of Another Person." *See* TEX. PENAL CODE ANN. § 9.33 (West 2011) (Defense of Third Person). There was no question that Adams stabbed Justin with a knife and that Justin suffered serious bodily injury as a result of being stabbed by Adams. The only issue upon which the jury could have acquitted Adams was on the defensive issue submitted to the jury, which reads in part:

> The defendant is not required to prove that defense of another applies to this case. Rather, the state must prove, beyond a reasonable doubt, that defense of another does not apply to the defendant's conduct.
>
> . . . .
>
> If you have found the state has proved the offense beyond a reasonable doubt, you must next decide whether the state has proved that the defendant's conduct was not justified by defense of another.
>
> To decide the issue of defense of another, you must determine whether the state has proved, beyond a reasonable doubt, one of the following elements. The elements are that –
>
> 1. the defendant did not believe his conduct was immediately necessary to protect Luke Hisey against Justin Paul Romero's use or attempted use of unlawful deadly force; or
>
> 2. the defendant's belief was not reasonable; or
>
> 3. under the circumstances as the defendant reasonably believed them to be, the defendant would not have been permitted to use force or deadly force to protect himself against the unlawful force or unlawful deadly force with which the defendant reasonably believed Justin Paul Romero was threatening Luke Hisey.
>
> You must all agree that the state has proved [one of the above three elements]. You need not agree on which of these elements the state has proved.

If you find that the state has failed to prove, beyond a reasonable doubt, either element 1, 2 or 3 listed above, you must find the defendant "not guilty" of the offense of aggravated assault as alleged in . . . the indictment.

The jury reached a verdict of "not guilty."

In a jury trial for the aggravated assault of Joe, the ultimate issue would again be whether Adams was justified in using deadly force to protect Hisey.[1] Thus, we are faced squarely with a question posed by Judge Keller in *York v. State*, 342 S.W.3d 528 (Tex. Crim. App. 2011). In a footnote, Judge Keller asked: "Does the double-jeopardy protection—via *Ashe*'s 'ultimate fact' language—include the application of collateral estoppel to defenses (e.g. self-defense) and punishment-mitigation issues (e.g. sudden passion), and if not, should preclusive effect be given to jury findings on these types of issues on some other basis?" *York*, 342 S.W.3d at 552 n.155. We note that the Court of Criminal Appeals in *Watkins* concluded that collateral estoppel barred the State from relitigating the issue of "sudden passion" in a situation in which nothing in the record indicated that a rational jury could conclude that the defendant's state of mind changed during the five minutes between the two shootings at issue. *Watkins*, 73 S.W.3d at 275. Similarly, we conclude that there is nothing in the record before us to indicate that a rational jury could conclude that Adams was acting in defense of Hisey when he stabbed Justin but not when he stabbed Joe. *See id.* The stabbings occurred almost simultaneously.

And, although *Ashe* involved the issue of identity instead of a defensive issue, we believe that the rationale of *Ashe* is applicable to the instant case. Ashe was tried and acquitted for the armed robbery of Donald Knight, who was one of six victims that were playing poker when three or four masked men, armed with weapons,

---

[1]We note that, with the exception of the exclusion of Justin's middle name, the exact language that we quoted above from the jury charge in Adams's trial for the aggravated assault of Justin was included in the jury charge in a prior trial in this cause. Adams was tried in the present cause in November 2017 for the aggravated assault of Joe; that trial resulted in a mistrial, with eleven jurors voting "not guilty."

robbed the victims. 397 U.S. at 437–38. In *Ashe*, the Supreme Court applied the doctrine of collateral estoppel and held that the jury's acquittal of Ashe for the armed robbery of Knight barred the State from prosecuting Ashe for the armed robbery of one of the other victims because the only issue in the first trial was the identity of Ashe as being one of the robbers—an issue that the jury resolved against the State. *Ashe*, 397 U.S. at 439, 445–47. The Supreme Court stated:

> Once a jury had determined upon conflicting testimony that there was at least a reasonable doubt that [Ashe] was one of the robbers, the State could not present the same or different identification evidence in a second prosecution for the robbery of Knight in the hope that a different jury might find that evidence more convincing. The situation is constitutionally no different here, even though the second trial related to another victim of the same robbery. For the name of the victim, in the circumstances of this case, had no bearing whatever upon the issue of whether the petitioner was one of the robbers.

*Ashe*, 397 U.S. at 446. Similar to *Ashe*, the ultimate issue of fact in the State's prosecution of Adams was decided against the State in the first trial; the jury found that there was at least a reasonable doubt that Adams acted in defense of Hisey during the altercation that involved both Justin and Joe. Defense of a third person would again be an ultimate issue of fact in the State's prosecution of Adams for stabbing Joe—as reflected by the previous trial that resulted in a mistrial. Therefore, we conclude that Adams should be protected from having to "run the gantlet"[2] again and that collateral estoppel bars the State from relitigating the issue of defense of a third person under the circumstances present in this case. Accordingly, we sustain Adams's sole issue on appeal.

---

[2]*Ashe*, 397 U.S. at 446 (quoting *Green*, 355 U.S. at 190).

We reverse the order of the trial court and remand this matter to the trial court with instructions to enter an order granting the relief requested in Adams's application for writ of habeas corpus. *See* Tex. R. App. P. 31.3.


MIKE WILLSON

JUSTICE


June 14, 2018

Publish. *See* Tex. R. App. P. 47.2(b).

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[3]

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.