Affirmed and Opinion filed March 9, 2004















Affirmed and
Opinion filed March 9, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01236-CV

____________

 

JOHNNY LONG, JR., Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 

__________________________________________________

 

On Appeal from
the 338th District Court

Harris County, Texas

Trial Court
Cause No. 705,783

 

__________________________________________________

 

O P I N I O N

            This is an
accelerated appeal from an order committing appellant Johnny Long, Jr. to the
care of Kerrville
 State Hospital
for extended mental-health services.  A
jury found by clear and convincing evidence that appellant continued to meet
the criteria for involuntary commitment and required inpatient treatment.  Based on these findings, the trial court
ordered appellant committed for a 12-month period.  In four issues for our review, appellant
contends that the trial court erred in (1) admitting evidence of appellant’s
criminal acts committed while he was insane; (2) denying appellant’s request
for transfer from the Harris County Jail to the Harris County Psychiatric
Center and then admitting evidence of appellant’s behavior while housed at the
jail; (3) proceeding with the commitment hearing without a recommendation for
treatment on file from the single portal authority; and (4) holding the hearing
after the previous commitment order had expired.  We affirm. 

I.  Factual and Procedural Background

            In April 1998, a jury found appellant “not guilty by
reason of insanity” of the 1995 murder of a woman at a Gerland’s Food Fair in
Harris County.  Appellant was committed
to Vernon State Hospital
in accordance with Texas Code of Criminal Procedure article 46.03, section
4(d).  Each year, appellant, diagnosed
with psychosis due to a seizure disorder,[1] has been
recommitted to inpatient care by court order, most recently at Kerrville State Hospital.


            Prior to the expiration of the 2001
recommitment order, the State filed with the trial court an application to
continue appellant’s mental-health services. 
The application included medical certificates from Dr. Debra Osterman
and Dr. Thomas Brandon, who each examined appellant by court order while he was
at the Harris County Jail.  Appellant was
transferred from Kerrville
 State Hospital
to the Harris County Jail around October 9, 2002, pending his recommitment
proceeding.  Appellant filed a motion to
be transferred from the jail to the Harris
 County Psychiatric
 Center, and the trial
court denied the motion the same day. 
The psychiatrists who examined appellant while at the jail concluded
that appellant met the criteria for commitment to a mental-health facility,
citing, among other things, lack of insight into the “suddenness or
unexpectedness of onset of his psychotic episodes.”  On his behalf, the unit psychiatrist and
chief executive officer of Kerrville State Hospital filed a letter and
certificate recommending appellant be placed in a group home with follow up by
the Harris County Act Team.  

 

            Appellant challenged his need for
continued inpatient care in a November 2002 proceeding.  A jury found appellant mentally ill and
likely to cause serious harm to others. 
The jury also found appellant suffered severe and abnormal mental,
emotional, or physical distress, experienced substantial mental or physical
deterioration of his ability to function independently, and was unable to make
a rational and informed decision regarding treatment.  In addition, the jury concluded that
appellant’s condition was expected to continue for more than 90 days.  The trial court then ordered appellant
committed to Kerrville
 State Hospital,
finding it the least restrictive appropriate setting available.  This appeal followed.  

II.  Analysis and Discussion

A.        Did the trial court err
in allowing evidence of appellant’s past crimes at the recommitment hearing?

 

Appellant
first argues that the trial court erred by allowing the jury to consider
evidence of past criminal acts committed while he was insane.  He contends admitting this evidence is
contrary to the intent of the Texas Mental Health Code[2] and
violates his double-jeopardy and collateral-estoppel rights.  In addition, appellant claims this evidence
is not relevant and is unfairly prejudicial. 
We disagree.           During appellant’s recommitment
hearing, the State introduced evidence from a 1991 incident at Hermann Hospital, in which appellant attacked a
nurse and hit a medical student with a shoe. 
According to testimony from the nurse, two hospital staff members died
and another was injured when they fell through an air-conditioner vent while
attempting to restrain the appellant.  The
State also raised the details of the 1995 death of a woman at a Gerland’s Food
Fair that led to appellant’s murder charge and subsequent acquittal on the
grounds of “not guilty by reason of insanity.”

1.  Double
Jeopardy 

Appellant
claims the State’s introduction of past criminal acts at an annual recommitment
hearing is contrary to the intent of the Texas Mental Health Code and results
in successive prosecution and punishment for the same offenses in violation of
the double-jeopardy doctrine. 
Specifically, appellant argues that (1) when the court orders him
committed each year, it amounts to multiple punishments for the same past
offenses; and (2) when he is required to answer to a jury each year for the
past criminal acts, it constitutes successive prosecutions.   

The State
argues that any objection to evidence of past crimes based on double jeopardy
was waived by appellant’s failure to object on that basis at trial.  See
Gonzalez v. State, 8 S.W.3d 640, 642–46 (Tex. Crim. App. 2000).[3]   To preserve a complaint for appellate
review, a party must present a timely objection to the trial court.  See
Tex. R. App. P. 33.1(a)(1).  A defendant has the burden to preserve a
double-jeopardy objection at or before the time the charge is submitted to the
jury.  Gonzalez, 8 S.W.3d at 642. 
At the recommitment hearing, appellant did not object to evidence
regarding his past crimes on the grounds that such evidence violated his
double-jeopardy rights.  Appellant’s
objections to the evidence went only to relevance and unfair prejudice.  Because of the fundamental nature of
double-jeopardy protections, however, appellant is excused from the
preservation requirement when “(1) the undisputed facts show the double
jeopardy violation is clearly apparent on the face of the record, and (2) when
enforcement of usual rules of procedural default serves no legitimate state
interest.”  Id. at 643; Roy v. State, 76
S.W.3d 87, 93 (Tex. App.—Houston [14th Dist.] 2002, no pet.).  The critical inquiry is whether the record
before the appellate court clearly reflects a double-jeopardy violation.  Roy, 76 S.W.3d
at 93.  We must find that appellant
satisfied both prongs of the test to hold he can raise his complaint for the
first time on appeal.  Id.   

The Fifth
Amendment to the United States Constitution provides that no person shall “be
subject for the same offence to be twice put in jeopardy of life or limb.”  U.S.
Const. amend. V.  The
double-jeopardy clause has been interpreted to prevent (1) a second prosecution
for the same offense after acquittal; (2) a second prosecution for the same
offense after conviction; and (3) multiple punishments for the same
offense.  Bailey v. State, 87 S.W.3d 122, 126 (Tex. Crim. App. 2002).  

In this
case, the trial court conducts a hearing each year to determine whether
appellant “continues to meet the criteria for involuntary commitment.”  Tex.
Code Crim. Proc. Ann. art. 46.03, § 4(d)(5) (Vernon Pamph. 2001).  The court can only recommit appellant if it
finds that he meets one of the criteria set forth in Texas Mental Health Code
section 574.035.  See Tex. Health & Safety
Code Ann. § 574.035 (Vernon
Supp. 2001).  Appellant correctly states
that these criteria are intended to assess appellant’s present dangerousness both to himself and others and to assess
appellant’s present mental
condition.  See id.; Campbell v. State,
118 S.W.3d 788, 793 (Tex. App.—Houston
[14th Dist.] 2003, pet. denied) (emphasis in original).  This court considered the same issue on the
merits in Campbell v. State.  In that case, the court concluded that
recommitment hearings, and the judgment following the hearings, are neither
criminal prosecutions nor punishments.  See id. 
The court reasoned that when a jury revisits the original crimes in a
recommitment hearing, the crimes are used as additional background information
to assess appellant’s improvement, not to re-adjudicate the original
offense.  See id. at 793–94. 

In
addition, a commitment under article 46.03 is a civil matter, despite the
underlying criminal prosecution.  See Campbell
v. State, 85 S.W.3d 176, 180 (Tex.
2002).  Double jeopardy applies only to
criminal cases.  Ex parte Watkins, 73 S.W.3d 264, 267 (Tex. Crim. App. 2002).  The civil nature of the proceeding can be
overcome by a showing that the involuntary commitment is punitive or
retaliatory in nature.  Campbell, 118 S.W.3d at 794.  To do so in this instance would require
appellant to demonstrate that the current legislative scheme of treating
mentally ill persons at psychiatric facilities is punitive or retaliatory.  See id.  Appellant has not offered evidence in this
regard.  In addition, reviewing past
criminal acts on an annual basis does not “transform the hearing from a civil
one to a punitive or retaliatory one.”  Id.  Rather, the past acts provide a basis for
determining treatment progress and current behavior.  See id.    

Therefore,
we conclude that revisiting appellant’s past criminal acts committed while he
was insane does not constitute successive prosecution or punishment and,
therefore, does not violate his double-jeopardy rights.  Further, because there is no double-jeopardy
violation clearly reflected on the face of the record before us, we need not
address the second prong of the Gonzalez
test.  Consequently, appellant forfeited
his right to raise for the first time on appeal a double-jeopardy violation by
failing to object at trial.

            2.  Collateral Estoppel

            Appellant
next contends that collateral estoppel bars the introduction of his prior
criminal conduct into evidence. 
Specifically, appellant argues that the facts of the 1991 and 1995
crimes committed while he was insane are being relitigated at the annual
commitment hearings in violation of the collateral-estoppel doctrine.  Because this issue was not raised below, the
State maintains that appellant cannot raise it for the first time on appeal. 

            Like double
jeopardy, collateral estoppel is also based on the constitutional right not to
be placed in jeopardy more than once for the same crime.  See
Ashe v. Swenson, 397 U.S.
436, 443 (1970); Ex parte Watkins, 73
S.W.3d 264, 267 (Tex. Crim. App. 2002). 
Assuming appellant can raise a collateral-estoppel violation for the
first time on appeal if he meets the two-prong Gonzalez test,[4] we
find that because the record does not clearly reflect a collateral-estoppel
violation on its face, appellant has failed to meet the first prong of the
test.

            Appellant argues that each year the
State relitigates the fact that three people have died because of acts he
committed while he was insane.  He
contends these facts shift the focus from his present condition and place it on
his past conduct.  Appellant references
only two cases in his argument, both of which address constitutionally based
collateral estoppel.  See Ashe, 397 U.S. at 445 (finding collateral
estoppel is embodied in the Fifth Amendment guarantee against double jeopardy);
Ex parte Taylor, 101 S.W.3d 434,
440–46 (Tex. Crim. App. 2002) (analyzing collateral estoppel under Ashe v. Swenson).  This court will address the issue
accordingly.  Under the
collateral-estoppel doctrine, “‘when an issue of ultimate fact has once been
determined by a valid and final judgment, that issue cannot again be litigated
between the same parties in any future lawsuit.’”  Ex parte Watkins, 73 S.W.3d
at 268 (quoting Ashe, 397 U.S. at
443).  To determine whether collateral
estoppel bars part or all of a subsequent prosecution, courts employ a two-step
analysis in which they ask the following: (1) what facts were “necessarily
decided” in the first proceeding; and (2) do those “necessarily decided” facts
constitute essential elements of the offense in the second trial.  See Ex
parte Taylor, 101 S.W.3d at 440.  The
entire trial record must be examined to determine precisely what fact, or
combination of facts, the jury necessarily decided.  See id.
at 441.

            Appellant does not specify which
facts were “necessarily decided” in the first proceeding nor does he address
which proceeding constituted the first proceeding.  In terms of the 1991 incident, there is no
record of the trial court proceeding, if any, before us.  The clerk’s record begins with the complaint
in the 1995 case.  Therefore, this court
cannot assess which facts were “necessarily decided” in a proceeding based on
the 1991 incident.  

            As for the 1995 criminal act, a jury
found appellant “not guilty by reason of insanity.”  See Ex
parte Watkins, 73 S.W.3d at 269 & n.14 (stating the task of determining
which historical facts a jury found to support an acquittal is made easier when
given special issues, such as insanity at the time the offense was
committed).  No party to the recommitment
hearing seems to be arguing that appellant was not insane when he committed the
offenses.  Assuming appellant is
referring to the recommitment hearings themselves as the proceedings barred by
collateral estoppel, his argument rests on the fact that the State continues to
raise his past conduct each year.  Even
if this were enough to point the court to the facts appellant feels were
“necessarily decided,” appellant has not discussed how those “necessarily decided”
facts are essential elements of the “offense in the second trial.”  In addition, appellant does not cite any
authority finding collateral estoppel in the context of a recommitment
hearing.  See Campbell,
118 S.W.3d at 795.  In fact, this court
declined to find collateral estoppel under very similar facts in Campbell.  See id.
at 794–95.  Therefore, as in the Campbell
case, we do not find collateral estoppel applicable here.  Accordingly, because the undisputed facts
fail to show a collateral-estoppel violation on the face of the record, appellant
cannot raise this issue for the first time on appeal. 

            3.  Relevance and Prejudice

            Appellant
next contends that the trial court erred by admitting evidence of the criminal
acts committed while he was insane because the evidence was not relevant to his
present mental condition, and was unfairly prejudicial, serving only to inflame
the jury.  See Tex. R. Evid.
401, 402, 403.  We review a trial court’s
decision to admit or exclude evidence under an abuse of discretion
standard.  See City of Brownsville
v. Alvarado, 897 S.W.2d 750, 753 (Tex.
1995).  A trial court abuses its
discretion when it acts “without regard for any guiding rules or
principles.”  Id.
at 754.  Evidence is relevant if it has
“any tendency to make any fact that is of consequence to the determination of
the action more probable or less probable than it would be without the
evidence.”  Tex. R. Evid. 401.   

To
determine whether someone requires extended mental-health services under the
Texas Mental Health Code, the jury must find by clear and convincing evidence
that: 

(1)       the proposed patient is mentally ill; 

(2)       as a result of that mental illness the proposed patient:  

(A)      is likely to cause serious harm to himself; 

(B)      is likely to cause serious harm to others; or 

(C)      is: 

(i)        suffering severe and abnormal mental, emotional, or physical
distress; 

(ii)       experiencing substantial mental or physical deterioration of
the proposed patient’s ability to function independently, which is exhibited by
the proposed patient’s inability, except for reasons of indigence, to provide
for the proposed patient’s basic needs, including food, clothing, health, or
safety; and 

(iii)     unable to make a rational and informed decision as to whether or
not to submit to treatment; 

(3)       the proposed patient’s condition is expected to continue for
more than 90 days; and 

(4)       the proposed patient has received court-ordered inpatient
mental health services under this subtitle or under Article 46.02, Code of
Criminal Procedure, for at least 60 consecutive days during the preceding 12
months.

 

Tex. Health & Safety Code Ann. § 574.035(a) (Vernon 2003).  To be clear and convincing under subsection
(a), the evidence must include expert testimony and evidence of a recent overt
act or a continuing pattern of behavior that tends to confirm (1) the
likelihood of serious harm to the proposed patient or others; or (2) the
proposed patient’s distress and the deterioration of the proposed patient’s
ability to function.  See id.
§ 574.035(e).  

            This court addressed a similar
relevance issue in Campbell.  In that case, the appellant contended that
his actions while criminally insane were not relevant to the findings required
under section 574.035 of the Texas Mental Health Code.  See Campbell, 118 S.W.3d
at 795.  In concluding the evidence was
relevant to the jury’s function at trial, the court stated that evidence of
past criminal conduct provides a benchmark by which experts, and the jury, can
measure someone’s emotional and psychological progress.  Id. at
796.  According to expert testimony in
this case, knowledge of appellant’s past acts was important to providing an
accurate and fair medical evaluation. 
One expert expressed concern regarding appellant’s inability to grasp
the significance of taking his medication and the serious consequences of not
taking it.  At least one expert testified
that appellant continues to blame others for both the 1991 and 1995 incidents,
claiming Hermann Hospital should have blocked off what he thought was an elevator
shaft in the first instance and citing his doctor for changing his medication
as the reason for the latter act. 
Without some reference to the details of the crimes, it would be
difficult for the experts to discuss the consequences of appellant’s noncompliance
with medication, which, according to testimony, had occurred while appellant
was at the Harris County Jail shortly before the hearing.  In addition, the experts would have been very
limited in their discussion of appellant’s lack of understanding as to what
happened during the 1991 incident and his placing of blame on others for both
the 1991 and 1995 incidents, all of which experts found important in assessing
appellant’s current mental-health status.

            Therefore, we conclude the trial
court did not abuse its discretion by determining that evidence of appellant’s
past criminal conduct is relevant to a determination of his present
mental-health condition under the Texas Mental Health Code.  

            Appellant
also argues that the trial court abused its discretion by finding that the
evidence was not unfairly prejudicial. 
When a party objects under Texas Rule of Evidence 403, a trial court
must conduct a balancing test, weighing the danger of prejudice against the
probative value of the evidence.  Waldrep v. Tex. Employers Ins. Ass’n, 21
S.W.3d 692, 703 (Tex. App.—Austin 2000, pet. denied).  The fact that evidence has some prejudicial
effect is insufficient to warrant its exclusion.  Pittsburgh
Corning Corp. v. Walters, 1 S.W.3d 759, 772 (Tex. App.—Corpus Christi 1999,
pet. denied).  Under rule 403, relevant
evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  See Tex. R. Evid. 403 (emphasis
added).  “Unfair prejudice” means “an
undue tendency to suggest [a] decision on an improper basis, commonly, though
not necessarily, an emotional one.”  Weidner v. Sanchez, 14 S.W.3d 353, 365 (Tex. App.—Houston
[14th Dist.] 2000, no pet.) (quoting Turner
v. PV Int’l Corp., 765 S.W.2d 455, 471 (Tex. App.—Dallas 1988, writ denied
per curiam, 778 S.W.2d 865 (Tex. 1989))).

            Appellant contends the State’s
continual references to the details of the 1991 and 1995 criminal acts
committed while he was insane served only to inflame the jury, particularly the
State’s “theme” of urging the jury to weigh the importance of appellant’s
rights with society’s rights to be protected from him.  During appellant’s recommitment hearing, the
jury heard testimony from eyewitnesses to the 1991 and 1995 criminal acts
committed while appellant was insane. 
The State also introduced photographs from the 1991 incident and a
diagram of the store where appellant shot a woman in 1995.  While this may have had some prejudicial
effect, the jury also heard extensive expert testimony about appellant’s mental
state, his behavior over the previous year, both at the Kerrville facility and at the Harris County
Jail, and recommendations regarding his release or continued commitment.  In fact, 

 class=Section2>

much of the
testimony surrounded appellant’s medication while at the Harris County Jail in
the weeks preceding the hearing.  Because
the evidence of his past conduct was highly probative of appellant’s progress,
this court cannot conclude that the trial court abused its discretion when it
allowed evidence of appellant’s past acts committed while insane.    

            Appellant’s contentions that the
evidence should have been excluded on the basis of double jeopardy, collateral
estoppel, relevance, and unfair prejudice lack merit.  Accordingly, we overrule appellant’s first
issue.  

            B.        Did the trial
court err by denying appellant’s motion to transfer from Harris County
Jail to a mental-health facility and allowing evidence of appellant’s behavior
while at the jail?

 

            In his
second issue, appellant contends the trial court erred when it denied his
request for transfer from the Harris County Jail to the Harris County
 Psychiatric Center.  Appellant claims he was harmed by the trial
court’s denial of transfer because (1) the State repeatedly informed the jury
that appellant was housed at the jail; (2) the jury observed appellant in jail
clothing;[5] and
(3) the trial court allowed evidence of his behavior while housed at the jail.

            On October 28, 2002, appellant filed
a motion to be transferred from the Harris County Jail to Harris County
 Psychiatric Center.  The trial court denied the order on the same
day.  According to testimony, appellant
had been housed at the jail since at least October 9, 2002, presumably while he
awaited his commitment proceeding. 
During that time, expert witnesses from the jail testified that appellant
refused to take medication, did not receive his antipsychotic medication for
approximately 21 days, and failed to attend a class held at the jail. 

 class=Section3>

            In support of his argument that the
trial court erred in denying his transfer and in allowing evidence of his
behavior at the jail, appellant cites provisions of the Texas Mental Health
Code dealing with emergency detention, detention when someone is under
protective custody, and a general provision regarding the housing of patients
in the “least restrictive appropriate setting.”[6]  See
Tex. Health & Safety Code §§
571.004, 573.001, 574.027 (Vernon 2003). 
In addition, appellant cites a provision of the Local Government Code,
which states:

(a)       A person suspected to be or adjudged insane may not be held in
a county jail unless the person:  

(1)       demonstrates homicidal tendencies; and 

(2)       must be restrained from committing acts of violence against
other persons.

(b)       A person requiring restraint under this section may be held in
a county jail for not more than 24 hours. 
The person shall be kept under observation at all times.

(c)       At the end of the 24-hour period, the person shall be released
or taken to a hospital or mental hospital. 

 

Tex. Local Gov’t Code § 351.014 (Vernon 1999). 
The State concedes that appellant’s citation to these provisions is
accurate and does not contend the trial court was correct in denying the
motion.  However, even if the trial court
erred in denying appellant’s motion to transfer, the record indicates appellant
has been returned to a mental-health facility due to the court’s order
committing him to Kerrville
 State Hospital.  Therefore, the issue of his confinement,
while arguably erroneous at the time, is now moot.  See
Florence v. Crawford, 351 S.W.2d 77, 83 (Tex. App.—Texarkana 1961, no writ)
(denying discharge of appellant under protective custody order provision of
Texas Mental Health Code when appellant was properly housed in hospital, rather
than jail, by the appellate stage of the proceeding).  

            Appellant also argues the trial court
erred in admitting evidence of his behavior while he was housed at the Harris
County Jail.  The State contends
appellant is precluded from raising this issue on appeal because he did not
object to the evidence at trial on the ground that he was housed at the jail
improperly.  To preserve error, the
complaint on appeal must comport with the objection lodged in the trial
court.  See Tex. R. App. P. 33.1(a).  During the testimony regarding his stay at
the jail, appellant objected only four times, stating speculation and
repetition, as well as relevance and prejudice with regard to his past criminal
conduct.  Appellant did not object on the
grounds he is now claiming on appeal. 
Accordingly, we overrule appellant’s second issue. 

            C.        Did the trial
court err by conducting a hearing without a “Recommendation for Treatment” as
required by the Mental Health Code? 

 

            In his third issue, appellant
contends that the trial court erroneously conducted the recommitment hearing
without a “Recommendation for Treatment” from the proper authority on file
pursuant to Texas Mental Health Code section 574.012.[7]  This section states that, prior to a hearing,
the court shall direct the local mental health authority in the county in which
an application is filed to file with the court a recommendation for the most
appropriate treatment alternative for the proposed patient.  Tex.
Health & Safety Code Ann. § 574.012(a)–(b) (Vernon 2003).  The section further provides that a “hearing
on an application may not be held before the recommendation for treatment is
filed unless the court determines that an emergency exists.”  Id. §
574.012(d).  A review of the record
reveals no objection or motion made by appellant on the grounds that the
hearing was invalid due to the lack of a recommendation for treatment by the
single portal authority.  Because the
appellant did not object on this basis, he has not preserved the issue for
review on appeal.  See Tex. R. App. P. 33.1(a).
Appellant’s third issue is overruled.

D.        Did the trial court err in holding a recommitment hearing after the
previous order had expired?

 

            In his fourth issue, appellant contends that the trial
court erred when it conducted his recommitment hearing after the previous
commitment order had expired. 
Specifically, appellant claims that article 46.03, section 4(d)(5)
mandates such a hearing be held prior to the previous order’s expiration, and
by not complying with that requirement, appellant was entitled to immediate
release.  We disagree.

            Appellant is correct that article
46.03, section 4(d)(5) requires a court “upon the expiration of a commitment
order . . . [to] discharge [] the acquitted person or on the motion of the
district or county attorney or on its own motion [] hold a hearing, prior to
the expiration of the commitment order . . . . 
See Tex. Code Crim. Proc. Ann. art. 46.03, sec. 4(d)(5) (Vernon Supp. 2004).  The Texas Supreme Court has addressed
appellant’s argument and concluded that article 46.03, section 4(d)(5) does not
demand release just because a hearing is delayed.  See State v. Roland, 973 S.W.2d 665, 666 (Tex. 1998).  The court noted that, while article 46.03,
section 4(d)(5) supplies a procedural timeline, it does not enumerate the
consequences for failure to hold a timely hearing.  Id.  The court found the legislature clearly
intended the judiciary to oversee such proceedings and inferring automatic
release due to delay, especially when the State could demonstrate the appellant
should not be released, defeated that purpose. 
See id. at 667.  

            Here, the jury found the State
demonstrated by clear and convincing evidence, including the testimony of Drs.
Debra Osterman and Thomas Brandon, that appellant met the criteria for extended
mental-health services.  Because the legislature
intended judicial oversight of appellant’s release under article 46.03, section
4(d)(5), the trial court did not err when it began recommitment proceedings
after the expiration of appellant’s prior commitment order.  Accordingly, we overrule appellant’s fourth
issue.

 








            The judgment of the trial court is
affirmed. 

 

                                                                        /s/        Leslie Brock Yates 

                                                                                    Justice

 

Judgment
rendered and Opinion filed March 9, 2004.

Panel
consists of Justices Yates, Edelman, and Guzman.

 

 











            [1]  Testimony from some of the expert witnesses
suggests appellant may also be suffering from dementia.





            [2]  Title 7, subtitle C of the Texas Health &
Safety Code is known as the Texas Mental Health Code and will be referred to as
such in this opinion.  See Tex.
Health & Safety Code § 571.001 (Vernon 1992).





            [3]  Appellant is contending two double-jeopardy
violations have occurred, multiple punishments for the same past offenses and
successive prosecutions.  The Gonzalez court dealt specifically with
multiple punishments when fashioning its two-part test.  See
Gonzalez, 8 S.W.3d at 642.  The court
noted the distinction between the two types of double-jeopardy claims,
recognizing that a pretrial writ of habeas corpus is the usual procedural
vehicle for raising successive-prosecution claims.  Id. at 643
n.9.  To the extent Gonzalez applies to successive prosecutions, the result is the same
as appellant’s multiple-punishments claim.





            [4]  The Court of Criminal Appeals has stated
that, while double jeopardy and collateral estoppel are different concepts, the
two doctrines are treated similarly when a collateral-estoppel claim is based
on the constitutional rule set forth by the United States Supreme Court in Ashe v. Swenson.  Ex
parte Watkins, 73 S.W.3d 264, 268 (Tex. Crim. App. 2002). The court has not
specifically stated, however, that the two doctrines should be treated
similarly for purposes of waiver.  While
it may be possible that the Gonzalez
test applies not only to waiver of double-jeopardy claims but also to
constitutionally based collateral estoppel, the court did not address that
issue in Gonzalez.  See
Gonzalez, 8 S.W.3d at 642–46. In the civil context, failing to present a
collateral-estoppel argument to the trial court constitutes waiver. See Tex.
R. App. P. 33.1(a); Mayes v.
Stewart, 11 S.W.3d  440, 450 (Tex. App.—Houston [14th Dist.]
2000, pet. denied). 





            [5]  In its brief to this court, the State
explains in a footnote that appellant’s counsel on appeal informed the State
that the argument pertaining to appellant’s clothing was in error and, as a
result, appellant planned to file an amended brief.  Appellant has not filed an amended brief with
the court; however, the record does not indicate appellant was in jail clothing
for the commitment proceeding.  When
asked to identify him in the courtroom, witnesses consistently stated that
appellant was wearing a brown or tan shirt. 
One witness identified appellant in a “gray-colored shirt with a black
pattern.”  Because appellant’s argument
has no basis in the record, this court will not address it.

 





            [6]  Appellant also cites generally to other
sections of the Mental Health Code which refer to commitment of mentally ill
persons to mental-health facilities.  See Tex.
Health & Safety Code Ann.   
§§ 574.036, 574.037, 574.041, 574.046.





            [7]  Appellant contends the recommendation must
come from the single portal authority for the county.  This section was amended in 2001, prior to
appellant’s commitment hearing, and this language is no longer included.