# NO. 12-21-00159-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TIMOTHY PARMER,* *APPELLANT* | § | *APPEAL FROM THE 402ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *WOOD COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Timothy Parmer appeals his conviction for aggravated assault causing serious bodily injury. In two issues, Appellant argues that he was denied his constitutional right to a speedy trial and the continuation of payment of fines from his inmate trust account amounts to double jeopardy. We affirm.

## BACKGROUND

In August 2010, Appellant was indicted for attempted capital murder. In January 2017, a jury found him "guilty" as charged, and he was sentenced to imprisonment for life. The Sixth Court of Appeals reversed the trial court's judgment and remanded the matter for a new trial.[1] The appellate court's mandate issued on May 18, 2018.

In September 2018, Appellant was charged by a new indictment with aggravated assault of a public servant under the same facts as the original case; the original indictment was not dismissed. In August 2019, Appellant filed a motion to dismiss for failure to provide a speedy trial. In September 2019, the State dismissed the charges for aggravated assault of a public servant because Appellant was charged outside of the applicable statute of limitations. Instead,

---

[1] *See* **Parmer v. State**, 545 S.W.3d 724, 733 (Tex. App.–Texarkana 2018, no pet.).

the State proceeded under the original indictment, and Appellant announced he was not ready to proceed in light of this change in circumstances. As a result, the case was reset to March 2020. But due to the COVID-19 pandemic, another pretrial hearing was not conducted until August 23, 2021. There, Appellant again raised the issue of his motion to dismiss for violation of his right to a speedy trial, as well as a motion to dismiss based on double jeopardy.

The matter was reconvened on September 9, at which point the trial court denied Appellant's motions and Appellant pleaded "guilty" to the lesser included offense of aggravated assault causing serious bodily injury. Thereafter, the trial court sentenced Appellant to imprisonment for twenty years, and this appeal followed.

## RIGHT TO A SPEEDY TRIAL

In his first issue, Appellant contends that the trial court improperly denied his motion to dismiss for failure to provide a speedy trial.

### Standard of Review and Applicable Law

The essential ingredient of the Sixth Amendment's speedy trial guarantee is "orderly expedition and not mere speed." *U.S. v. Marion*, 404 U.S. 307, 313, 92 S. Ct. 455, 459, 30 L. Ed. 2d 468 (1971) (Sixth Amendment right to speedy trial would appear to guarantee criminal defendant that Government will move with dispatch that is appropriate to assure him early and proper disposition of charges against him). Since 1972, United States Supreme Court precedent has required courts to analyze federal constitutional speedy trial claims "on an ad hoc basis" by weighing and then balancing four factors: (1) length of the delay; (2) reason for the delay; (3) assertion of the right; and (4) prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192, 33 L. Ed. 2d 101 (1972). This balancing test requires weighing case by case "the conduct of both the prosecution and the defendant." *Id.* No single factor is a "necessary or sufficient condition to the finding" of a speedy trial violation. *Id.*, 407 U.S. at 533, 92 S. Ct. at 2193; *State v. Wei*, 447 S.W.3d 549, 553 (Tex. App.–Houston [14th Dist.] 2014, pet. ref'd). The related factors must be considered together with such other circumstances as may be relevant. *See Wei*, 447 S.W.3d at 553.

In reviewing the trial court's decision on Appellant's speedy trial claim, we apply a bifurcated standard of review. *See State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999). We review factual issues for abuse of discretion and review legal issues de novo. *Id.*

2

Because the trial court ruled against Appellant on his motion to dismiss, we must presume the trial court resolved any disputed fact issues in the State's favor, and we are required to defer to these implied findings of fact that the record supports. *See **id.***

**Length of the Delay**

The approximately forty-month delay from the time of the issuance of the appellate court's mandate until Appellant pleaded "guilty" meets the first factor and triggers analysis under the remaining ***Barker*** factors. *See, e.g., id.*, at 822 (delay of seventeen months between time of the appellant's arrest and the date of speedy trial hearing).

**Reason for the Delay**

Under ***Barker***, "different weights should be assigned to different reasons" for the delay. ***Barker***, 407 U.S. at 531, 92 S. Ct. at 2192. A "deliberate attempt to delay the trial" should be weighed heavily against the government. ***Id.*** A "more neutral reason[,] such as negligence or overcrowded courts[,] should be weighed [against the government] less heavily." ***Id.*** A valid reason for the delay should not be weighed against the government at all. ***Id.*** (valid reason for the delay "should serve to justify appropriate delay"). And delay which is attributable in whole or in part to the defendant may even constitute a waiver of a speedy trial claim. ***Id.***, 407 U.S. at 528–30, 92 S. Ct. at 2191–92 (delay attributable to defendant constitutes waiver of speedy trial); *see also **Dickey v. Florida***, 398 U.S. 30, 48, 90 S. Ct. 1564, 1574, 26 L. Ed. 2d 26 (1970) (Brennan, J., concurring) (defendant may be "disentitled to the speedy trial safeguard in the case of a delay for which he has, or shares, responsibility").

The burden of excusing the delay rests with the state, and in light of a silent record or one containing reasons insufficient to excuse the delay, we must presume that no valid reason for the delay existed. *See **Turner v. State***, 545 S.W.2d 133, 137–38 (Tex. Crim. App. 1976). As such, the state's failure to secure Appellant's presence at trial while Appellant was incarcerated will weigh against the state. But absent evidence of intent, we will not weigh the factor so heavily as we would were there evidence of intentional conduct on the state's part. *See **Barker***, 407 U.S. at 531, 92 S. Ct. at 2192.

The record in this case reflects that the appellate court issued its mandate ordering a new trial on May 18, 2018. On July 19, the prosecuting attorney announced that Appellant was in the Wood County jail awaiting a competency evaluation. The competency evaluation was filed on August 23. We conclude that this delay for a valid reason should not weigh against either party.

The first trial setting was September 24, but the trial court judge recused himself in August and another judge was appointed to preside over the case on August 30. It does not appear that Appellant moved for the judge's recusal and the reason for the judge's doing so does not appear in the record. Therefore, because the trial judge's recusal does not involve any intentional or negligent act by the State, we conclude that this delay had a valid, yet unknown, reason and should not weigh against either party. *See, e.g.*, ***Degarmo v. State***, 922 S.W.2d 256, 267 (Tex. App.–Houston [14th Dist.] 1996, pet. ref'd) (discussing recusal of trial judge in criminal case).

In September 2018, a grand jury handed down a new indictment based on the same facts for aggravated assault on a public servant. On October 5, a status hearing was conducted, in which the matter was raised that the victim in the case suffered a stroke caused by the shooting for which Appellant was charged and that medical records might be needed in the event that the State might seek to proceed on capital murder charges. The matter was reset to November. The victim's worsening medical condition and its potential to delay the case is not an act we can attribute to either party.

Another status hearing was held in November 2018. Around this time, the Wood County District Attorney resigned in light of an investigation based on sexual harassment allegations. Also, another case was set for trial in November, precluding the possibility of the instant case's reaching trial that month. We weigh any delay due to the District Attorney's resignation as well as the decision to try another case in advance of this case against the State but not heavily.

In January 2019, the second trial judge assigned to this case stepped down for unknown reasons, but there is no mention of recusal in the record. Another trial judge was assigned to replace him in September 2019. Because unlike the previous recusal, the reasons for the second trial judge's decision to step down are entirely unknown and do not appear to be the result of recusal, we weigh this delay against the State, but not heavily.

In September 2019, the State dismissed the charges for aggravated assault of a public servant because Appellant was charged outside of the statute of limitations. Instead, the State proceeded under the original indictment, and Appellant announced he was not ready to proceed in light of this change in circumstances. The State's decision to indict Appellant for aggravated assault of a public servant was well outside of the applicable statute of limitations,[2] and such

---

[2] *See* TEX. CODE CRIM PROC. ANN. art. 12.01(7) (West 2005).

4

negligence ordinarily would result in weighing any delay against the State. But we are mindful that a delay which is attributable in whole or in part to the defendant may even constitute a waiver of a speedy trial claim. *Barker*, 407 U.S. at 528–30, 92 S. Ct. at 2191–92. Here, it is clear that Appellant's decision not to proceed is offset by the State's negligence. Thus, we conclude that it should not be weighed against either party.

As a result, the case was reset to March 2020. But due to the COVID-19 pandemic, another pretrial hearing was not conducted until August 23, 2021. We conclude that this sixteen-month delay due to a global pandemic should not be weighed against either party. *See State v. Conatser*, 645 S.W.3d 925, 929–30 (Tex. App.–Dallas 2022, no pet.).

The matter was reconvened on September 9, at which point the trial court denied Appellant's motions for dismissal due to failure to provide a speedy trial. Thereafter, Appellant pleaded "guilty" to the lesser included offense of aggravated assault causing serious bodily injury.

## Assertion of Federal Constitutional Right to Speedy Trial

Under *Barker*, a defendant is responsible for asserting or demanding his right to a speedy trial. *See Barker*, 407 U.S. at 528–29, 92 S. Ct. at 2191. Although a defendant's failure to assert his speedy trial right does not amount to a waiver of that right, "failure to assert the right . . . make[s] it difficult for a defendant to prove he was denied a speedy trial." *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003). This is because a defendant's lack of a timely demand for a speedy trial indicates strongly that he did not really want a speedy trial and that he was not prejudiced by a lack thereof. *See id.* Furthermore, the longer the delay, the more likely it becomes that a defendant would take some action to obtain a speedy trial. *See id.* Thus, inaction weighs more heavily against a violation the longer the delay becomes. *Id.*

Here, Appellant filed his motion to dismiss for failure to provide a speedy trial on August 16, 2019, nearly fifteen months after the date of the appellate court's mandate. However, there is no evidence that Appellant actively sought a hearing on his motion, even though the motion ultimately was heard at the pretrial hearing on August 23, 2021. *See Zamorano v. State*, 84 S.W.3d 643, 652 n.44 (Tex. Crim. App. 2002) (citing *Cook v. State*, 741 S.W.2d 928, 940 (Tex. Crim. App. 1987), *vacated and remanded on other grounds*, 488 U.S. 807, 109 S. Ct. 39, 102 L. Ed. 2d 19 (1988)) (assertion of right factor weighs against appellant where there is no evidence beyond motions for speedy trial filed with district clerk that appellant asserted right to speedy

trial by requesting hearings to present evidence on the matter).  Moreover, we are mindful that when a defendant presents a request for a speedy trial as a motion to dismiss, it weakens the speedy trial claim because it shows a desire to have no trial instead of a speedy trial.  *See Zamorano*, 84 S.W.3d at 651 n.40.  Thus, we conclude that even though Appellant eventually filed a speedy trial motion, his presentation of the motion as a request for dismissal, as well as his failure actively to seek a hearing at which to present evidence on the matter, causes this factor to weigh against him.  *See id.*

## Prejudice

The last *Barker* factor is "prejudice to the defendant."  *Barker*, 407 U.S. at 532–33, 92 S. Ct. at 2193–94.  Prejudice is assessed in light of the interests that the speedy trial right is designed to protect.  *Id.*  These interests are (1) preventing oppressive pretrial incarceration, (2) minimizing the anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired.  *Id.*  Of these interests, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  *Id.*  Even so, the four interests are interrelated and must be considered together with such other circumstances as may be relevant.  *See Munoz*, 991 S.W.2d at 828.  The court still must engage in a difficult and sensitive balancing process.  *Id.*  Although a defendant has the burden to make some showing of prejudice, actual prejudice is not required.  *Id.* at 826.  When a defendant makes a prima facie showing of prejudice, the state must prove that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay.  *Id.*  Excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove.  *See Doggett v. U.S.*, 505 U.S. 647, 655, 112 S. Ct. 2686, 2693, 120 L. Ed. 2d 520 (1992).  Yet such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria.  *Id.*, 505 U.S. at 656, 112 S. Ct. at 2693.  But when the state's negligence causes extraordinary delay and when the presumption of prejudice, whether specified or presumed, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted by the state, the defendant is entitled to relief.  *Id.*, 505 U.S. at 658, 112 S. Ct. at 2694.

During the time in question, Appellant already was incarcerated, serving a twenty-year sentence on an unrelated aggravated assault charge.  Under these circumstances we mainly are concerned with whether Appellant's ability to defend himself was prejudiced by the delay.  *See*

*Dragoo*, 96 S.W.3d at 315.  Furthermore, Appellant made no argument based on anxiety or concern to the trial court.  *See* TEX. R. APP. P. 33.1(a).

With regard to the length of time before trial, we conclude that the forty-month delay, for which Appellant bore no responsibility, was patently excessive and presumptively prejudicial. *See id.*  Still, this presumption of prejudice is extenuated by appellant's longtime acquiescence in the delay by the fifteen-month interval in his requesting a speedy trial and his failure to actively seek a hearing on the motion.  *See id.*

We next consider the issue of whether the possibility that Appellant's ability to defend himself was impaired.  This case presents the less-common scenario of whether the right to a speedy trial was violated when a case is remanded by an appellate court for a new trial.  Indeed, it is axiomatic that when a trial already has been conducted, the passage of time's ability to impair a defense greatly is diminished because evidence and testimony is preserved by the record of the first trial.

However, Appellant argues that the delay in this case resulted in the unavailability of several witnesses.  At the hearing on Appellant's motion, his investigator, Michael Collins, testified that he compiled a Google maps image depicting the houses surrounding Timothy Farmer's house (the scene of the alleged crime) and that the occupants of those houses at the time of the events underlying the case at hand, no longer lived at those locations.  According to Collins's testimony, three of the owners had since moved.  However, there was no evidence offered as to whether these former residents were potential witnesses favorable to Appellant or whether they were unavailable to testify despite no longer living in the area.  Collins further testified that two of the residents, Nora McKenney and David Meeks, no longer were living.  But again, no evidence was presented regarding whether either person was a witness favorable to Appellant.[3]

**Balancing the *Barker* Factors**

We now consider and weigh the aforementioned factors.  The reasons for the delay, in two instances, are attributable to the State, but only on a "negligence" level.  *See **Barker***, 407 U.S. at 531, 925 S. Ct. at 2192.  Moreover, we cannot overlook that the greatest period of delay

---

[3] The record reflects that McKenney died on February 17, 2021.  Thus, Appellant had approximately twenty-one months to interview her between the date of the appellate court mandate and her death.  And while Meeks's death preceded the appellate court's mandate, the record reflects that his wife, Shirley, did not sell the house until July 2020, and there is no evidence that Appellant sought to interview her.

resulted from the COVID-19 pandemic, which cannot be attributed to either party. *See Conatser*, 645 S.W.3d at 929–30. And despite the fact that Appellant filed a motion for speedy trial, he waited to do so for nearly fifteen months following the appellate court's mandate and couched it in terms of seeking a dismissal. *See Zamorano*, 84 S.W.3d at 652 n.40. Furthermore, there is no indication that he actively sought a hearing on the matter until a much later date and did not, in fact, argue the matter to the trial court until August 2021. Thus, this factor weighs against him. *See id.* at 652 n.44; *see also Cantu v. State*, 253 S.W.3d. 273, 283 (Tex. Crim. App. 2008). Lastly, we concluded that the forty-month delay is presumptively prejudicial, albeit extenuated by Appellant's delay in initially raising the issue of his right to a speedy trial. But as previously discussed, Appellant already was incarcerated on unrelated charges and the record does not support that Appellant's ability to defend his case was compromised. It is per se notum that the evidence should be well-preserved in the record of his previous trial. And despite the evidence that several potential witnesses had moved or were deceased, there is no evidence as to the present unavailability of the living witnesses or whether their testimonies would be favorable to Appellant. Furthermore, there is no evidence that Appellant sought to interview one of the now-deceased witnesses or, in the case of another, the spouse who occupied their marital residence, from the time of the appellate court's mandate forward. Thus, having considered the aforementioned factors and the entirety of the record, we conclude that the factors weigh against Appellant. *See Barker*, 407 U.S. at 539, 92 S. Ct. at 2182. Therefore, we hold that Appellant's right to a speedy trial was not violated. Appellant's first issue is overruled.

## DOUBLE JEOPARDY

In his second issue, Appellant argues that he was subjected to double jeopardy when, following the reversal of his original conviction and the appellate court's mandate, funds to cover, in part, his fine in that case continued to be withdrawn from his inmate trust account.

The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense. U.S. CONST. amend. V; *see also* TEX. CODE CRIM. PROC. ANN. art. 1.10 (West 2005). This clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Ex parte Watkins*, 73 S.W.3d 264, 267 n.5 (Tex. Crim. App. 2002). The Double Jeopardy Clause's

general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside. *Ex parte Graves*, 271 S.W.3d 801, 806 (Tex. App.–Waco 2008, pet. ref'd).

In the instant case, Appellant contends that by continuing to withdraw funds from his inmate trust account, the State subjected him to double jeopardy because he received multiple punishments for the same offense. The State contends that the withdrawal of funds from Appellant's inmate trust account to satisfy fines stemming from Appellant's now-vacated conviction, while improper, does not constitute double jeopardy. We agree.

While a fine in a criminal case does constitute punishment,[4] a "multiple punishments" double jeopardy claim occurs when a defendant receives multiple punishments for the same offense. *See Watkins*, 73 S.W.3d at 267 n.5; *see also Cervantes v. State*, 815 S.W.2d 569, 573–74 (Tex. Crim. App. 1991). Here, Appellant's inmate trust account was debited a set amount each month based, in part, on the fine for the ultimately-overturned conviction. While this was improper because the judgment in that case was vacated, the order permitting the deduction from his account was based on the fine in the original case and, therefore, did not constitute a separate punishment for the original offense. Thus, Appellant has not been subjected to double jeopardy.[5] *See id.* Appellant's second issue is overruled.

## DISPOSITION

Having overruled Appellant's first and second issues, we **affirm** the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered August 17, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

---

[4] *See, e.g.*, *Quesada v. State*, 398 S.W.3d 731, 733–34 (Tex. App.–San Antonio 2009, no pet.).

[5] As the State notes in its brief, there are several remedies available to Appellant to rectify the wrongful withdrawal of funds, including filing a grievance within the Texas Department of Criminal Justice under Texas Government Code, Section 501.008, filing a motion to amend, withdraw, or vacate the writ of attachment, or pursuing a civil judgment under Texas Civil Practice and Remedies Code, Section 51.012.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 17, 2022**

**NO. 12-21-00159-CR**

**TIMOTHY PARMER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 402nd District Court

of Wood County, Texas (Tr.Ct.No. 21,105-2010)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*